IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JONATHAN JOSEPH LIND,

      Petitioner,

v.                                    Case No. 2:14-cv-26284

RALPH TERRY, SUPERINTENDENT,
Mt. Olive Correctional Complex,

      Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF Nos. 63, 88, 107); Petitioner's motion for leave to file a *Martinez* brief, (ECF No. 94); and Petitioner's motion seeking to be appointed counsel, conduct discovery, provide supplemental information, and have an evidentiary hearing. (ECF No. 95). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

After thorough consideration of the petition and supporting documentation, the undersigned conclusively **FINDS** that Petitioner fails to state a meritorious claim under § 2254. Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, a petition for habeas relief must be dismissed when "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in

the district court." Therefore, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Petitioner's habeas petition and pending motions and **DISMISS** this case from the docket of the court.

## I.    Relevant Facts and Procedural History

In March 2006, Petitioner Jonathan Joseph Lind ("Lind") went to the residence of Edward Ayers ("the victim") with the intention of receiving oral sex for payment in order to purchase crack cocaine. (ECF Nos. 79-14 at 2; 90-3 at 106-07); *Lind v. Ballard*, No. 14-0116, 2015 WL 5125884, at *1 (W. Va. Aug. 31, 2015). According to Lind, after arriving at the victim's apartment and spending some time drinking and taking drugs, Lind changed his mind about engaging in sexual activity with the victim. (ECF No. 90-3 at 120-21). An argument purportedly ensued between Lind and the victim because Lind rejected the victim's advances. (*Id.*). By Lind's account, the argument escalated to a physical altercation, and the men began to hit and shove each other. The victim then allegedly pulled out a knife, which he swung at Lind, grazing his arms twice, and twice the victim supposedly stated that he would "blow [Lind's] head off" if Lind did not agree to have oral sex. (*Id.* at 122). Lind claimed that the victim walked into the bedroom and began rummaging through his chest of drawers. (*Id.*). At that point, Lind retrieved a hammer from a toolbox in the living room, went into the bedroom, and began to bludgeon the victim in the head. (*Id.* at 122, 132). Although the evidence indicated that the victim was struck many times, Lind contended that he hit the victim with the hammer "just to knock him out" so that Lind could take the victim's keys. Lind contended that the victim "would not let [Lind] out" of the apartment and, in order to leave, he needed the keys to unlock a deadbolt on the front door. (*Id.* at 122-23, 132).

After bludgeoning the victim to death, Lind wrapped the hammer in a blanket and

poured dish detergent on the refrigerator handle and kitchen counters to eliminate his fingerprints. (ECF No. 90-3 at 132). Lind stole the victim's wallet and keys from the victim's pants pocket, inserted one of the keys into the double deadbolt lock on the inside of the victim's front door, unlocked the door, exited the apartment, stole the victim's car, and drove to the residence of his friend, Steve Jones ("Jones"), where Lind smoked crack cocaine. (*Id.* at 123-24, 128). Thereafter, Lind admittedly used the victim's credit card two times, but he stated that he then passed the card to Jones, who used it to buy food at a McDonald's drive-through. (*Id.* at 125). Lind later traded the victim's car for crack cocaine. (*Id.* at 131).

Lind maintained that he did not go to the victim's apartment with a premeditated plan to harm the victim and steal his property. He asserted that he struck the victim with the hammer because he feared for his safety and wanted to escape the apartment. (*Id.* at 126). However, Lind conceded that he told the police his fight with the victim was over politics, and that he did not mention anything of a sexual nature or that the victim threatened to harm him. (*Id.* at 127-29).

Lind was charged in the Circuit Court of Kanawha County, West Virginia (the "state court"), with one count of first-degree murder in violation of West Virginia Code § 61–2–1; one count of first-degree robbery in violation of West Virginia Code § 61–2–12(a); and three counts of forgery of a credit card in violation of West Virginia Code § 61–3–24a(c). *Lind*, 2015 WL 5125884, at *1. Following a three-day jury trial in March 2007, Lind was convicted of second-degree murder, first-degree robbery, and three counts of forgery of a credit card. *Id.* Lind received the statutory maximum sentence of 40 years for his murder conviction and was given credit of 428 days for time served. (ECF Nos. 90-3 at 276; 90-7 at 2). For first degree-robbery, the trial court sentenced Lind to 80 years in prison to be

3

served consecutively to his sentence for second-degree murder. (ECF Nos. 90-3 at 276; 90-7 at 3). For each of the three counts of forgery of a credit card, Lind received additional consecutive prison sentences of one to ten years. (ECF Nos. 90-3 at 277; 90-7 at 3). In total, Lind was sentenced to 33 to 150 years of incarceration. *Lind v. Ballard*, No. 16-1033, 2017 WL 4570572, at *2 (W. Va. Oct. 13, 2017); *see* W. Va. Code § 62-12-13(b)(1)(A) (2006) (stating that a defendant is eligible for parole after serving one-fourth of definite term sentences and the minimum terms of indeterminate sentences).

Lind filed a direct appeal in the Supreme Court of Appeals of West Virginia ("SCAWV"), which affirmed his conviction and sentence on March 20, 2008. *Lind*, 2017 WL 4570572, at *2. Lind then filed a petition for a writ of habeas corpus in the state court. *Id*. After holding an evidentiary hearing, the state court denied the petition. *Id*. Lind did not appeal the judgment, but later filed a second petition for a writ of habeas corpus in the state court. *Id*. In that petition, Lind complained in part about his underlying conviction and sentence, and in part about perceived deficiencies in the first habeas proceeding. *Id*. at 2-3. In the interest of allowing Lind "a full and thorough review," the state court permitted Lind to present evidence on all grounds for relief, including those grounds that the state court denied in the first proceeding. *Id*. at *2. Another evidentiary hearing was conducted, and the state court denied Lind's second state habeas petition. (*Id*.)

Prior to appealing the denial of his second state habeas petition to the SCAWV, Lind filed in this court a petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254. (ECF No. 1). Lind explained in a contemporaneous motion that he filed his § 2254 petition before exhausting his state court remedies because his appointed attorney had taken no action in his second state habeas case. He was concerned

4

that the one-year statute of limitations under 28 U.S.C.A. § 2244(d)(1) would expire, and he would lose the opportunity to seek federal habeas review. (ECF No. 3 at 2). Lind's state habeas counsel subsequently filed Lind's appeal, and the SCAWV affirmed the state court's denial of Lind's second state habeas petition. *See* (ECF Nos. 24 at 2, 79 at 4). Lind filed a third state habeas petition on the basis that his state habeas counsel failed to fully develop and raise additional grounds for relief. (ECF Nos. 78 at 3; 79-12). Lind's third state habeas petition was likewise denied by the state court, and that decision was affirmed by the SCAWV. (ECF Nos. 79-12 at 5, 30-43; 79-14).

During the above state proceedings, Lind amended his federal habeas petition, and various orders were entered pending the exhaustion of Lind's state remedies. Ultimately, given the very complex procedural history of Lind's federal habeas petition, the undersigned ordered Lind to file a list of all habeas grounds that he wished to raise in this action. (ECF No. 87). Lind filed a response listing the following grounds:

A.  Trial Court Errors:

1.  The trial court failed to instruct the jury on larceny as a lesser included offense of robbery.

2.  The trial court excluded the expert report and testimony of Board-Certified Psychiatrist, Bobby Miller, M.D. ("Dr. Miller"), who performed a forensic psychiatry evaluation of Lind at the request of Lind's counsel prior to trial.

3.  The trial court failed to instruct the jury on *animus furandi*, an essential element of robbery.

4.  The trial court imposed an unconstitutionally excessive 80-year sentence for first-degree robbery.

5.  The trial court did not produce a sufficient record to justify the 80-year robbery sentence.

B.  Ineffective Assistance of Counsel:[1]

1.  Trial counsel failed to call Dr. Miller, Lind's mother and siblings, or his ex-girlfriend to offer mitigating evidence at sentencing.

2.  Trial counsel failed to file a timely motion for appointment of co-counsel.

3.  Trial counsel failed to vigorously cross-examine Lind's former friend, Jones, who testified for the prosecution.

4.  Trial counsel failed to introduce photographs of the deadbolt lock on the victim's door and the cuts on Lind's arm to show that Lind acted in self-defense.

5.  Trial counsel did not attempt to secure a video clip showing that Jones, not Lind, used the victim's credit card to purchase food at McDonald's.

6.  Trial counsel did not request a jury instruction on *animus furandi*.

7.  Trial counsel did not raise on appeal that Lind's sentence was unconstitutionally excessive.

8.  Trial counsel did not depose Robert Shingleton ("Shingleton") or ask that the trial be stayed until Shingleton's direct appeal was concluded.

C.  Other Errors:

1.  The indictment charging Lind with robbery was defective because it did not contain the essential element of *animus furandi*.

2.  The prosecution offered knowingly perjured testimony from Jones, stating that Lind used the victim's credit card at McDonald's.

3.  There was insufficient evidence to support Lind's conviction for forgery of the victim's credit card at McDonald's.

(ECF Nos. 63, 88). Respondent filed a response to Lind's federal habeas petition, and Lind

filed a reply. (ECF Nos. 90, 93). Lind also filed motions seeking leave to file a *Martinez*

---

[1] Respondent's Answer also addresses Lind's claims of ineffective assistance of habeas counsel that were raised in Lind's original federal habeas petition. (ECF No. 90 at 8-10). However, Lind concedes that ineffective assistance of habeas counsel is not a basis for federal habeas relief. (ECF No. 93 at 8). Rather, Lind discusses the deficiencies of his habeas counsel as a means to excuse the procedural default of his ineffective assistance of trial counsel claims. Lind contends that this Court should consider the merits of his ineffective assistance of trial counsel claims because it was the fault of his habeas counsel, despite Lind's best efforts, that such claims were not properly developed and raised in his state proceedings.

brief, to be appointed counsel, conduct discovery, provide supplemental information, and request an evidentiary hearing. (ECF Nos. 94 and 95).

On October 31, 2018, the undersigned entered Proposed Findings and Recommendations on the foregoing claims. The undersigned concluded that Lind failed to state a meritorious claim under § 2254. (ECF No. 99). Therefore, the undersigned recommended that the presiding District Judge deny Lind's habeas petition and pending motions and dismiss the matter from the docket of the court. (*Id.*). However, before the District Judge ruled on the petition, Lind filed a combined motion to amend his petition and motion for stay and abeyance. (ECF No. 104). Lind advised the court that he had filed a fourth state habeas petition raising two additional claims of ineffective assistance of counsel. Lind sought to add the two claims to his federal habeas petition. However, because his fourth state habeas petition was still pending in the SCAWV, Lind requested a stay and abeyance in his federal case as he exhausted his state court remedies on those claims. The District Judge granted Lind's motion to amend and also stayed this action and held Lind's federal petition in abeyance to avoid a time-bar to his unexhausted claims. (ECF No. 105). Lind was ordered to file within 30 days after exhausting his state court remedies an amended habeas petition setting forth all exhausted claims. (*Id.* at 3).

After the SCAWV denied his fourth state habeas petition, Lind filed a Supplement to Habeas Petition in this court. (ECF No. 107). He reasserted in list form the claims considered in the undersigned's previous PF&R. (*Id.* at 1-2). He further asserted the following claims:

> 1. Trial counsel violated *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018), by not putting forth a defense to the credit card forgery charge relating to the use of the victim's credit card at McDonald's.

2.  State habeas counsel failed to investigate and raise the claim that Lind's trial counsel was ineffective in failing to put on available mitigation evidence during Lind's sentencing hearing.

(ECF No. 107 at 2-11). Respondent filed a response regarding Lind's additional claims to which Lind filed a reply. (ECF Nos. 111, 112).

## II.   <u>Standard of Review</u>

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When determining the merits of a § 2254 petition, the district court applies the standard set forth in § 2254(d), which provides that the habeas petition of a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2). Moreover, the factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). Thus, when reviewing a petition for habeas relief, the federal court uses a "highly deferential lens." *DeCastro v. Branker*, 642 F.3d 442, 449 (4th Cir. 2011).

A claim is generally considered to have been "adjudicated on the merits" when it is

"substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." *Thomas v. Davis*, 192 F.3d 445, 455 (4th Cir. 1999). The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have separate and independent meanings. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision warrants habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (quoting *Williams*, 529 U.S. at 405) (internal quotations omitted). The district court may grant a habeas writ under the "unreasonable application" clause if the state court "identifies the correct governing legal rule from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular case." *Id.* at 300–01 (internal marks omitted).

Accordingly, the AEDPA limits the federal habeas court's scope of review to the reasonableness, rather than the correctness, of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be unreasonable." *Williams*, 529 U.S. at 365.

## III. <u>Discussion</u>

Lind alleges that his state criminal conviction should be vacated under § 2254 due to numerous errors by the trial court, ineffective assistance of counsel, and other legal deficiencies. Each claim is addressed below, in turn.

## A. Alleged Trial Court Errors

### *1. Jury Instruction on Larceny*

Lind asserts that he was denied due process of law because the trial court failed to instruct the jury on larceny as a lesser included offense of robbery. (ECF No. 63 at 2). West Virginia's robbery statute, W. Va. Code § 61-2-12, codified the common law definition of robbery, which is "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." *State v. Neider*, 295 S.E.2d 902, 907 (1982); *Roberts v. Ballard*, No. 1:13-CV-23245, 2014 WL 4929403, at *28 (S.D.W. Va. Sept. 30, 2014). The larceny statute at the time of Lind's offense in 2006 was the 1994 version, which proscribed "potential penalties for petit larceny (goods or chattels under $1,000) and grand larceny (goods or chattels over $1,000)," but it did not otherwise discuss the elements of the offense. *Roberts*, 2014 WL 4929403, at *29. The common law defined larceny as the taking and carrying away of "the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof." *Neider*, 295 S.E.2d at 907.

Larceny is indeed a lesser included offense of robbery under West Virginia law. *Id.* at 908. Specifically, robbery is a larceny with the addition of two elements: "the taking has to be from the person of another or in his presence and such taking has to be by force or putting the person in fear." *Id.* at 907. However, in West Virginia, "the fact that a lesser offense is included within a greater offense does not automatically entitle a defendant to obtain an instruction on the lesser included offense." *Id.* at 906. Rather, a lesser included offense instruction is required only when there is an "evidentiary conflict or evidentiary insufficiency as to the elements of the greater offense which differ from the elements of

the lesser included offense." *Id.*

In this case, Lind's counsel moved the trial court to include a larceny jury instruction, but the trial court denied the motion, stating that there was no evidence in the case to support the value of any property that was taken; thus, the trial court stated that it could not instruct the jury on petit or grand larceny and that the jury either had to find that Lind committed robbery or find him not guilty of that charge. (ECF No. 90-3 at 173-75). On post-conviction review, the state court disagreed with the trial court's basis for denying the larceny instruction because it "was well established that larceny is a lesser included offense of robbery, regardless of the value of the property at issue." (ECF No. 79-8 at 11). However, the state court found that Lind was not entitled to a larceny instruction because there was not a sufficient conflict in the evidence to warrant such instruction. (*Id.*) (citing *Neider*, 295 S.E.2d 902). The state court noted that robbery required the taking of money or goods by force or by putting the person in fear and Lind admitted in his own trial testimony that he hit the victim with a hammer to knock him out so that Lind could take the victim's keys. (*Id.* at 12). The state court concluded that a "clearer statement of the intent to take goods from another by use of force [was] hard to imagine." (*Id.*). Lind appealed this issue to the SCAWV, which "affirm[ed] the circuit court's finding that there was insufficient conflict in the evidence to warrant an instruction on the lesser-included offense of robbery." *Lind*, 2015 WL 5125884, at *6.

"On collateral review of a state trial court's jury instructions, a federal court exercises a limited role and the inquiry is narrow." *Rabb v. Ballard*, No. 2:09-CV-00159, 2011 WL 1299359, at *72 (S.D.W. Va. Feb. 24, 2011), *report and recommendation adopted,* 2011 WL 1299354 (S.D.W. Va. Mar. 31, 2011) (markings and citations omitted). In general "alleged errors in the instructions given by a trial court are not cognizable on

federal habeas review, because they raise issues of state law, not federal constitutional law." *Id.* Rather, a "federal court may grant habeas relief only when the challenged instruction by itself so infected the entire trial that the resulting conviction was undesirable, erroneous, or even universally condemned. *Id.*; *see also Ingram v. Daniels*, No. 5:15-HC-2279-FL, 2017 WL 979019, at *10 (E.D.N.C. Mar. 13, 2017); *Roberts*, 2014 WL 4929403, at *34; *Johnson v. Plumley*, No. 3:13-CV-133, 2014 WL 3735856, at *14 (N.D.W. Va. July 29, 2014).

Here, Lind argues that the jury should have been instructed on the offense of larceny because his intent to take property from the victim was not formed until after he killed the victim. (ECF No. 63 at 3). He bluntly states that "you cannot rob a dead man." (*Id.*). However, the state court concluded that Lind's own testimony belied his argument for a larceny instruction. Specifically, Lind stated that he struck the victim with a hammer in order to take the victim's keys. Therefore, there was no apparent evidentiary dispute over whether force was used to take property from the person or in the presence of the victim.

A review of the record verifies the conclusion reached by the state court. Lind unequivocally testified at trial that he used force for the specific and intentional purpose of taking the victim's keys from the victim without the victim's consent. This testimony provided an uncontested factual basis for refusing an instruction on the lesser included offense of larceny. Lind's decision to steal additional items of the victim's property after bludgeoning him to death does not alter the analysis of the jury instruction. Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 2. Exclusion of Dr. Miller

Lind next argues that he was denied the right to present a defense when the trial court precluded Dr. Miller's testimony and expert report at trial. (ECF No. 63 at 5). Approximately ten months after the crime at issue occurred and prior to Lind's trial, Dr. Miller performed a forensic psychiatry evaluation of Lind at the request of Lind's counsel. (ECF No. 90-11 at 2). Dr. Miller produced a written report in which he opined that Lind suffered from polysubstance abuse/dependence and a mental disease or defect, and Dr. Miller stated that Lind's voluntary intoxication on the night he went to the victim's apartment impacted the severity and extent of his actions at the time of the offenses. Nonetheless, Dr. Miller found that Lind was competent to stand trial; did not lack the substantial capacity to appreciate the wrongfulness of his actions and conform his conduct to the requirements of the law; and did not evidence diminished capacity at the time of the alleged offenses. (*Id*. at 4, 6). The prosecution moved to preclude Dr. Miller from testifying at trial on the ground that his testimony was irrelevant given that he did not find that Lind suffered from diminished capacity or lacked criminal responsibility for his actions. (ECF No. 90-2 at 48-50). The state court agreed and precluded Dr. Miller's testimony. (*Id*. at 55-56).

On habeas review, the state court reviewed its decision to exclude Dr. Miller's opinions at trial. (ECF No. 90-8 at 2). The state court concluded that Dr. Miller did not offer any opinion that could "legally impact the elements of the charged offenses." (*Id*.). Rather, the state court stated that Dr. Miller's report reflected that Lind was criminally responsible, did not evidence diminished capacity, and showed that Lind was able to form intent to commit the charged offenses, and later describe his ability to form that intent. (*Id*.). The SCAWV affirmed on appeal the state court's ruling on this claim. *Lind*, 2015 WL

5125884, at *6. The SCAWV explained that "the record [wa]s clear that the trial court excluded the report on ground of irrelevancy, and the habeas court denied petitioner relief on this ground because neither the report, nor the testimony of the expert, could legally impact the elements of the charged offenses," but "[r]ather the habeas court noted that the evidence petitioner complains was excluded actually demonstrated that petitioner was able to form intent at the time of the crime and was later able to describe his ability to form intent." *Id.*

Despite the above findings, Lind maintains that he is entitled to federal habeas relief based on the trial court's exclusion of Dr. Miller's opinions. Lind argues that his ability to present a defense was impeded because, although the jury was able to hear evidence that he used illicit drugs and consumed large amounts of alcohol on the night of the murder, the jury could not fully assess the impact of his intoxication and history of drug use on his ability to control his actions without the testimony of Dr. Miller. (ECF No. 63 at 9). According to Lind, "the jury would have been able to properly return a verdict of manslaughter" had the evidence from Dr. Miller been allowed at trial. (*Id.*).

"A state court's resolution of an evidentiary question generally does not give rise to a cognizable claim under § 2254." *Fullwood v. Lee*, 290 F.3d 663, 692 (4th Cir. 2002). "[I]n considering federal habeas corpus issues involving state evidentiary rulings, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." *Harper v. Ballard*, No. 2:13-CV-07421, 2015 WL 1431164, at *21 (S.D.W. Va. Mar. 27, 2015) (quoting *Barbe v. McBride,* 521 F.3d 443, 452–53 (4th Cir. 2008)). "It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented." *Id.*; *see also Nicholson v. Branker*, 739

F. Supp.2d 839, 860–61 (E.D.N.C. 2010) (discussing that even if the state court improperly excluded expert testimony, the issue was whether it had a "substantial and injurious effect or influence" at trial) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000) (stating that even if an evidentiary ruling was erroneous, "the ruling was not so extreme as to result in the denial of a constitutionally fair proceeding.").

In *State v. Joseph,* syl. pt. 3, 590 S.E.2d 718, 719 (W. Va. 2003), the SCAWV recognized that "[t]he diminished capacity defense is available in West Virginia to permit a defendant to introduce expert testimony regarding a mental disease or defect that rendered the defendant incapable, at the time the crime was committed, of forming a mental state that is an element of the crime charged." However, "[t]he existence of a mental illness is not alone sufficient to trigger a diminished capacity defense." *State v. Lambert*, 777 S.E.2d 649, 660 (2015). Rather, it "must be shown by psychiatric testimony that some type of mental illness rendered the defendant incapable of forming the specific intent elements." *Id.*

Moreover, in *State v. Keeton,* 272 S.E.2d 817 (W. Va. 1980), the SCAWV addressed the role of intoxication as a defense to a murder charge, indicating that while voluntary intoxication generally is never an excuse for committing a crime, where a defendant charged with murder is too intoxicated to be capable of deliberating and premeditating, evidence of extreme intoxication might be relevant to reducing first degree murder to a second degree murder charge. *Id.* at syl. pt. 2. As with a mental disease or defect, however, the state of intoxication alone is not sufficient to merit introduction of the issue to a jury. Rather, "the level of intoxication must be 'such as to render the accused incapable of forming an intent to kill, or of acting with malice, premeditation or deliberation.'" *Id.* at

15

821 (quoting *State v. Davis,* syl. pt. 2, 43 S.E. 99 (W. Va. 1902)).

In this case, Dr. Miller did not find that Lind was unable to form the specific intent to commit the crimes charged. Indeed, he reached the diametrically opposite conclusion. Dr. Miller found that Lind had the capacity at the time of the offenses to appreciate the wrongfulness of his actions and conform his conduct to the law and that Lind did not evidence diminished capacity. Consequently, Dr. Miller did not offer any *expert* opinions relevant to the defense. As the trial court pointed out, Dr. Miller could only testify about matters within the general knowledge of a lay juror; that being, that Lind's polysubstance abuse impaired his judgment to some degree, albeit not enough to render him incapable of formulating the necessary elements of the crimes with which he was charged. Therefore, Lind fails to show that the trial court's exclusion of Dr. Miller's opinions denied him a constitutionally fair proceeding. As such, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 3. Robbery Jury Instruction

Lind next contends that he was denied due process and his right to a fair trial when the trial court failed to instruct the jury that robbery required the essential element of *animus furandi*, which is the intent to steal or permanently deprive the owner of his property. (ECF No. 63 at 19). The SCAWV did not provide a substantive analysis of this claim on habeas review. In Lind's second state habeas proceeding, the SCAWV considered whether Lind's trial counsel was ineffective because he failed to request a jury instruction on *animus furandi*. The SCAWV simply stated that Lind was procedurally barred from claiming that his trial counsel was ineffective because Lind did not previously raise the

issue, and, at any rate, Lind would be unlikely to prevail on such argument. *Lind*, 2015 WL 5125884, at *5. Then, in Lind's third state habeas proceeding, the SCAWV cited that it ruled in Lind's second state habeas action that Lind's trial counsel was not ineffective for failing to request a complete jury instruction regarding the intent to steal. *Lind*, 2017 WL 4570572, at *5. Therefore, the SCAWV concluded that Lind's claim "that the jury was not properly instructed with regard to the intent to steal was fully and finally adjudicated in [Lind's second state habeas proceeding]." *Id.*

 "Generally speaking, allegations concerning instructional error are not cognizable on federal habeas review, because they raise issues of state law, not federal constitutional law." *Roberts*, 2014 WL 4929403, at *28. Nevertheless, it is clear that the jury instruction given in Lind's case was a correct statement of the law. The following instruction was given to the jury in Lind's trial:

> The defendant, Jonathan J. Lind, is charged in count two of the indictment with the felony offense of first degree robbery.
>
> One of two verdicts may be returned by you as to count two of the indictment. They are: 1) guilty of first degree robbery or 2) not guilty.
>
> The Court instructs the jury that if any person by force and violence feloniously takes, or feloniously attempts to take, from the person or presence of another any property or money or any other thing of value belonging to said person, he shall be guilty of robbery.
>
> The Court instructs the jury that any person who commits robbery by committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or uses the threat of deadly force by presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree.
>
> Before Jonathan J. Lind can be found guilty of the offense of first degree robbery as contained in count two of the indictment in this case, the State must overcome his presumption of innocence and prove to your satisfaction beyond a reasonable doubt that Jonathan J. Lind, in Kanawha County, West Virginia on the 31st day of March, 2006, did by force and violence take property or anything of value belonging to

Edward Ayers from the person or presence of the said Edward Ayers.

> If, after impartially considering all of the evidence in this case, each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of first degree robbery, then you may find the defendant guilty of robbery. If you have a reasonable doubt as to any one or more of these elements of first degree robbery, then you cannot return a verdict of guilty, and you must return a verdict of not guilty.

(ECF No. 90-3 at 195-97).

The foregoing jury instruction tracked the language of the West Virginia robbery statute, which provides that "[a]ny person who commits or attempts to commit robbery by:"

> Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

W. Va. Code § 61-2-12(a)(1) (2000). As previously discussed, "[i]t has been recognized that this statute does not actually define robbery." *State v. Wilkerson*, 738 S.E.2d 32, 37 (2013). "Rather, the elements of robbery, unaffected by the statute, are derived from the common law." *Id.* (markings and citation omitted). The common law definition of robbery includes: "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods." *Id.*

Lind contends that the jury was not instructed regarding the final element noted above, the "intent to steal," money or goods. The phrase "intent to steal" is defined in West Virginia common law as "the intent to feloniously deprive the owner permanently of his property." *State v. England*, 376 S.E.2d 548, 553 (1988) (markings and citations omitted). The SCAWV has stated that "[a]nimus furandi, or the intent to steal or to feloniously

18

deprive the owner permanently of his property, is an essential element in the crime of robbery." *Id.*

However, as stated by Respondent, jury instructions that sufficiently embody the taking of money or goods from a person by force and violence are an accurate statement of the crime of first-degree robbery in West Virginia. (ECF No. 90 at 28-30). The SCAWV has upheld the following jury instructions upon consideration of challenges like Lind's that the instructions omitted the necessary element of *animus furandi*:

> The Court further instructs the Jury that Armed Robbery is a felonious taking of money or goods of value from the person of another or in his presence, against his will, by force, or putting him in fear, by the threat or presenting of firearms or any other deadly weapon or instrumentality or by other violence to the person.
>
> You are further instructed that Armed Robbery is punishable by confinement in the penitentiary of this State for not less than ten years.
> ...
> The Court further instructs the Jury that the crime of robbery consists of theft of property from the person or in the presence of the owner, accompanied by violence or by putting him in fear, and the Court further instructs the Jury that if they believe, from all the evidence, beyond a reasonable doubt, on the 24th day of June, 1969, Robert Eugene Hudson, the defendant on trial, went to the home of Ransom Lovins White, and there with force and arms, took from the said Ransom Lovins White the sum of money and the articles testified to by the said Ransom Lovins White, and that the defendant, Robert Eugene Hudson, held the prosecuting witness under fear and intimidation, and these facts and circumstances you believe beyond a reasonable doubt, then you should find the defendant, Robert Eugene Hudson, guilty as charged in the within indictment.

*State v. Hudson*, 206 S.E.2d 415, 418–19 (1974).

> Therefore, if you believe from the evidence beyond all reasonable doubt, that Waldon Keith Davis acting in concert with Gary Wayne Davis did so rob the Elk Finance and Loan Company, by violence or by putting Walter R. Lawman in fear and took money belonging to the Elk Finance and Loan Company by force, then you may find the said Waldon Keith Davis guilty as charged in the within indictment.

*State v. Davis*, 172 S.E.2d 569, 578 (1970).

19

Like the instructions in *Hudson* and *Davis*, the robbery instruction in Lind's case clearly explained that the jury must find beyond a reasonable doubt that Lind used force and violence to take something of value from the person or presence of the victim. Therefore, the robbery jury instruction given in Lind's case was not erroneous and does not provide a basis for habeas relief. Thus, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 4. Excessive Robbery Sentence

Lind next argues that his robbery sentence of 80 years was unconstitutionally excessive and was a "back door mechanism" to punish him for first-degree murder, a crime for which Lind was not convicted. (ECF No. 63 at 23). On habeas review, the SCAWV applied a two-part test to evaluate whether Lind's sentence was so disproportionate that it violated the Constitution. *Lind*, 2015 WL 5125884, at *5. First, the SCAWV considered the sentence subjectively and concluded that Lind's 80-year robbery sentence did not offend the fundamental notions of human dignity where Lind "murdered a man, robbed him, and engaged in forgery." *Id.* The SCAWV then considered the sentence objectively and concluded that the sentence did not exceed the statutory limits of any offense charged against Lind, nor was it disproportionate to the sentence imposed for similar crimes in other jurisdictions. *Id.* The SCAWV cautioned that sentences imposed by trial courts are not subject to appellate review if the sentences were within statutory limits and were not based on some impermissible factor. *Id.*

"[T]he Eighth Amendment prohibits imposition of a sentence that is grossly

disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). However, "outside the context of a capital sentence a proportionality review is necessary only with respect to sentences to life imprisonment without the possibility of parole." *Estepp v. Ballard*, No. 3:08-cv-00102, 2010 WL 3702594, at *12–13 (S.D.W. Va. Sept. 16, 2010) (citing *Beverati v. Smith,* 120 F.3d 500, 504–05 (4th Cir.1997)); *Brewster v. Kirby*, 954 F. Supp. 1155, 1160 (N.D.W. Va. 1997), *appeal dismissed,* 139 F.3d 888 (4th Cir. 1998) (stating with regard to a §2254 petition alleging that a 125-year sentence for armed robbery was disproportionate to the crime that "[a] comparison of the gravity of the offense and harshness of penalty, sentences imposed for other crimes in the same jurisdiction, and sentences imposed for that crime in other jurisdictions ... [was] not required for sentences which are less than life without parole.") (citing *United States v. Francois,* 889 F.2d 1341 (4th Cir. 1989)). "Reviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as the discretion that trial courts possess in sentencing convicted criminals." *Estepp*, 2010 WL 3702594, at *12 (quoting *Solem v. Helm,* 463 U.S. 277, 290 (1983)). Undoubtedly, "[f]ederal courts respect the sentencing latitude afforded state judges under state law." *Morgan v. Perry*, No. 315-CV-00529-MOC-DCK, 2016 WL 593834, at *6 (W.D.N.C. Feb. 12, 2016). "The states bear the primary responsibility for the punishment of criminal offenders in our society, and federal courts risk upsetting the careful balance of federalism by intruding casually upon their sentencing processes." *Id.* (quoting *Deyton v. Keller*, 682 F.3d 340, 346 (4th Cir. 2012)).

Lind's potential sentence for first-degree robbery ranged from a statutory minimum term of ten years to the remainder of his natural life in prison. West Virginia Code § 61-2-12(a); *State v. Gibbs*, 797 S.E.2d 623, 636 (W. Va. 2017) (explaining the

"broad discretion given to trial courts under West Virginia Code § 61-2-12(a), which provides only a minimum sentence of ten years without proscribing a maximum number of years."). Therefore, Lind's sentence was very clearly within the penalty set by the West Virginia legislature. Furthermore, there is no evidence that his sentence was based on any "impermissible factors," such as "race, sex, national origin, creed, religion, [or] socioeconomic status." *State v. Moles*, No. 18-0903, 2019 WL 5092415, at *2 (W. Va. Oct. 11, 2019).

In addition, there is not an inference of gross disproportionality in this case. Contrary to Lind's argument that his robbery sentence was a "back door mechanism" to punish him for first-degree murder, the trial judge specifically explained her reasons for imposing the 80-year robbery sentence and explicitly stated that she considered the robbery separately from Lind's murder conviction. The trial judge explained that she wanted to be certain that she was imposing a sentence that was appropriate for the robbery itself. (ECF No. 90-3 at 276). Specifically, the trial judge recounted the egregious nature of the robbery, including that Lind bludgeoned the victim, left him in a pool of blood, made no effort to call medical personnel, and walked away with the victim's wallet and stole the victim's vehicle. (*Id*. at 276-77). The trial judge explained that she considered the robbery to be a separate offense and that Lind deserved an 80-year sentence for the robbery based upon the facts discussed above, excluding the fact that Lind murdered the victim. (*Id*. at 277).

Lind argues that his 80-year sentence for first-degree robbery was excessive given the fact that he was 19 years old at the time of the offense and that he was under the influence of intoxicants, as well as other factors. However, Lind does not assert a basis for relief under § 2254. Lind was not sentenced to death or life imprisonment without the

possibility of parole. In addition, although not relevant to a proportionality analysis, a non-exhaustive review of robbery sentences that have been upheld in West Virginia supports the sentence imposed in Lind's case. *State v. Chester*, No. 18-0140, 2019 WL 1224684, at *3 (W. Va. Mar. 15, 2019), *cert. denied sub nom. Chester v. W. Virginia*, 140 S. Ct. 239 (2019) (upholding 90-year sentences on each of the defendant's two robbery convictions); *State v. Adams*, 565 S.E.2d 353, 357 (W. Va. 2002) (holding that a 90-year sentence for aggravated robbery was not disproportionate); *State v. Ross*, 402 S.E.2d 248, 251 (W. Va. 1990) (holding that a 100-year sentence for aggravated robbery was not disproportionate); *State v. Gibbs*, 797 S.E.2d 623, 638 (W. Va. 2017) (holding that a 50-year sentence for first-degree robbery was not disproportionate); *compare State v. Cooper*, 304 S.E.2d 851, 855 (W. Va. 1983) (holding that a 45-year robbery sentence was disproportionate to the crime where the defendant was 19-years-old at the time of the offense, no weapon was used, and no victim was seriously or permanently injured).

Accordingly, the undersigned **FINDS** that the state court's adjudication of Lind's excessive sentence claim was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 5. Insufficient Sentencing Record

Lind next argues that the trial court did not produce a sufficient sentencing record to justify his robbery sentence, which was violative of his right to due process. (ECF No. 63 at 29). Lind states the trial judge failed to explore "anything positive" about Lind and "was clearly blinded with rage in sentencing" him. (*Id.* at 30). On habeas review, the SCAWV found no merit to Lind's claim that the sentencing rationale was not reflected in the record, noting that the trial judge clearly explained the reasons for the sentence that

she imposed. *Lind*, 2017 WL 4570572, at *6.

Lind cites various West Virginia cases, which he asserts stand for the proposition that a West Virginia sentencing judge should inquire into certain matters and reflect reasons for the sentence imposed in the sentencing order. (ECF No. 63 at 29). However, to the extent that Lind alleges an error purely under state law, he fails to assert any claim for federal habeas relief. *Johnson v. Booker*, No. 1:15-CV-01164 (CMH/JFA), 2016 WL 8737446, at *3 (E.D. Va. Oct. 21, 2016) ("Where a petitioner alleges that a state court incorrectly applied state law, the claim fails to state a basis for federal habeas corpus relief [...] A claim of error in a state court sentencing proceeding raises only issues of state law and thus is not cognizable in a § 2254 petition, even when the claim is couched in terms of equal protection and due process.") (markings and citations omitted). Moreover, to the extent that Lind relies on federal case law, which dictates that mitigating factors must be considered in capital cases, such authority is inapplicable to his case because Lind was not sentenced for a capital crime. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (discussing that a capital sentence is cruel and unusual punishment under the Eighth Amendment if it is imposed without an individualized determination that the punishment is appropriate, but stating that the "individualized capital sentencing doctrine" is not extended even to cases in which a defendant is sentenced to mandatory life in prison without the possibility of parole and the reason "that there is no comparable requirement outside the capital context [is] because of the qualitative difference between death and all other penalties.").

As noted by the appellate court, the sentencing judge provided clear reasons on the record for the length of Lind's robbery sentence. In particular, the judge emphasized that the brutality inflicted by Lind to accomplish the robbery, combined with his callousness

in leaving the victim lying in a pool of blood and in making no effort to call medical personnel for assistance, warranted a severe sentence. Therefore, the undersigned **FINDS** that the state court's adjudication of Lind's claim that there was an insufficient sentencing record to justify the robbery sentence  was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### B. Ineffective Assistance of Trial Counsel

As previously stated, Lind also raises on federal habeas review numerous allegations of ineffective assistance of trial counsel, including the following specific claims:

1. Trial counsel failed to call several witnesses to offer mitigating evidence at sentencing, including Dr. Miller, Lind's mother and siblings, and Lind's ex-girlfriend.

2. Trial counsel failed to file a timely motion for appointment of co-counsel.

3. Trial counsel failed to vigorously cross-examine Jones, who testified for the prosecution.

4. Trial counsel failed to introduce photographs of the deadbolt lock on the victim's door and the cuts on Lind's arm to show that Lind acted in self-defense.

5. Trial counsel did not attempt to secure a video clip, which showed that Jones, not Lind, used the victim's credit card to purchase food at McDonald's.

6. Trial counsel did not request a jury instruction on *animus furandi* as an essential element of robbery.

7. Trial counsel did not raise on appeal that Lind's sentence was unconstitutionally excessive.

8. Trial counsel did not depose Shingleton or ask that the trial be stayed until Shingleton's direct appeal was concluded.

25

(ECF No. 63 at 9-15).

Lind alleged in his second state habeas proceeding that the attorney appointed to represent him in his first habeas action failed to raise his claims of ineffective assistance of trial counsel. (ECF No. 79-10 at 14). The state court held an omnibus evidentiary hearing during which Lind's trial counsel, Lind's initial habeas counsel, and Lind testified. (ECF No. 79-8 at 2). Lind's trial counsel testified regarding his trial strategy and legal representation of Lind. (ECF No. 90-5 at 10-12, 15-33). Lind's initial habeas counsel testified that he went over with Lind in his first state habeas proceeding the "*Losh* list," which was the list of alleged trial errors that Lind was raising on state habeas review, and it did not include claims of ineffective assistance of trial counsel because Lind's habeas counsel did not determine that there were potentially meritorious grounds for such claims. (ECF Nos. 79-8 at 9, 90-6 at 6-8); *see Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981). According to counsel, Lind understood that any issues that he did not raise in his first state habeas proceeding would be waived. (ECF No. 90-6 at 7). Lind confirmed that his initial habeas counsel discussed the *Losh* list with him and told him that if he did not raise an issue, it was waived. (ECF No. 90-6 at 20-21). However, Lind claimed that he did not understand at the time that the waiver "was a permanent thing." (*Id.* at 21).

In any event, the state court denied Lind's second state habeas petition, and Lind appealed the decision to the SCAWV. (ECF Nos. 79-8 at 2-14, 79-10). Lind argued on appeal that his habeas counsel was constitutionally ineffective because Lind attempted to raise numerous claims of ineffective assistance of trial counsel in his various *pro se* filings in his first state habeas proceeding, but his habeas counsel failed to assert them. (ECF No. 79-10 at 14). The ineffective assistance of trial counsel claims that Lind listed in his SCAWV brief are the same claims that he now raises in his federal petition. (ECF No. 79-

10 at 15-16).

Concerning Lind's claims of ineffective assistance of habeas and trial counsel, the SCAWV found that Lind was "adequately represented in all stages of his case" and that there were "no grounds to support a claim of ineffective assistance of counsel." *Lind*, 2015 WL 5125884, at *3. The SCAWV specified that Lind was procedurally barred from alleging ineffective assistance of trial counsel because he did list such grounds in his *Losh* checklist and, additionally, he was unlikely to prevail on any such arguments because his counsel effectively advocated for him and secured a lesser conviction of second-degree murder. *Id.* at *5. Therefore, the SCAWV determined that it could not "be maintained that [Lind] was provided ineffective assistance of counsel at his trial." *Id.*

"Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). In West Virginia, there is a rebuttable presumption that a state habeas petitioner knowingly and intelligently waives any claim that could have been presented during a state habeas proceeding, but that was not presented at that time. West Virginia Code § 53-4A-1(c). This Court has recognized that West Virginia Code § 53-4A-1(c) is "an adequate and independent state ground," for procedural default purposes. *Green v. Ballard*, No. 3:02-1348, 2015 WL 1612198, at *5 (S.D.W. Va. Apr. 10, 2015). In addition, the United States Court of Appeals for the Fourth Circuit has held that a state procedural rule nearly identical to West Virginia Code § 53–4A–1(c) constituted an adequate and independent state law ground for decision. *Widmyer v. Ballard*, No. 1:10-CV-00084, 2018 WL 3069187, at *8 (N.D.W. Va. Feb. 7, 2018), *report and recommendation adopted,* 2018 WL 1518350 (N.D.W. Va. Mar. 28, 2018) (citing *Mu'Min v. Prewett*, 125 F.3d 192, 197 (4th Cir. 1997)).

27

In the instant matter, the SCAWV ruled that Lind's ineffective assistance of trial counsel claims were waived because Lind did not list them in his *Losh* list. Nevertheless, the SCAWV additionally ruled on the merits of Lind's ineffective assistance of trial claims in summary fashion. The Fourth Circuit has stated that a "federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law." *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010). Furthermore, the Fourth Circuit held that procedural default is not waived "when a state court reaches the merits of a federal claim as an alternative basis for dismissal." *Id.*

Therefore, because the SCAWV concluded that Lind's ineffective assistance of trial counsel claims were procedurally defaulted, the claims are barred from federal habeas review unless Lind "can establish 'cause' to excuse the procedural default and demonstrate that he suffered actual prejudice from the alleged error." *Davila*, 137 S. Ct. at 2062. The general rule, which was established in *Coleman v. Thompson,* 501 U.S. 722 (1991), is that "a prisoner does not have a constitutional right to counsel in state postconviction proceedings," thus "ineffective assistance in those proceedings does not qualify as cause to excuse a procedural default." *Id.*

However, in *Martinez v. Ryan,* 566 U.S. 1 (2012), and *Trevino v. Thaler,* 569 U.S. 413 (2013), the Supreme Court "announced a narrow exception to *Coleman*'s general rule." *Id.* at 2065. In *Martinez,* the Supreme Court held that "where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal ... 'a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if' the default results from the ineffective assistance of the prisoner's counsel in the collateral

proceeding." *Id.* (quoting *Martinez*, 566 U.S. at 17). Later, in *Trevino,* the Supreme Court clarified that the exception applied both where state law explicitly prohibited prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal and where, like West Virginia, the State's procedural framework, by reason of its design and operation, made it unlikely in a typical case that a defendant would have a meaningful opportunity to raise that claim on direct appeal. *Id.*; *McNemar v. Plumley*, No. 1:15-CV-237, 2016 WL 11268484, at *1 (N.D.W. Va. May 20, 2016), *report and recommendation adopted,* 2017 WL 1102656, at *1 n.1 (N.D.W. Va. Mar. 24, 2017), *appeal dismissed,* 697 F. App'x 238 (4th Cir. 2017) (stating that *Trevino "*narrowly extended the Supreme Court's holding in *Martinez* to cover the same set of facts arising in a jurisdiction that does not require an ineffective assistance of trial counsel claim be raised in an initial collateral review proceeding, such as West Virginia.").

In this case, Lind requests that the Court excuse the procedural default of his ineffective assistance of trial counsel claims based on *Martinez* and review the claims *de novo* or, alternatively, order an evidentiary hearing and allow Lind to further develop the record to show that his ineffective assistance of trial counsel claims are indeed "substantial" and subject to the *Martinez* exception. (ECF Nos. 94, 95). As indicated by Lind, the *Martinez* exception applies only to "substantial claims" of ineffective assistance of trial counsel, which requires the petitioner seeking to invoke the *Martinez* exception to demonstrate that the ineffective assistance of trial counsel claims have some merit. *Martinez*, 566 U.S. at 14 ("To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."); *Brantley v. Clarke*, No. 1:16-CV-1014 (LO/IDD), 2018 WL 1747329, at *8 (E.D. Va. Apr.

10, 2018), *appeal dismissed,* 738 F. App'x 802 (4th Cir. 2018) (stating that a prisoner must show that the ineffective assistance of counsel claims have some merit in order for *Martinez* to apply and the petitioner made no such showing as to any of his claims).

For the reasons discussed below, the undersigned **FINDS** that Lind fails to demonstrate that his procedurally defaulted claims of ineffective assistance of trial counsel are potentially meritorious. Consequently, those claims do not qualify for *de novo* review under the *Martinez* exception. However, even if the Court were to perform a *de novo* review, Lind's ineffective assistance of trial counsel claims would not provide a basis for habeas relief because Lind's trial counsel was not constitutionally deficient. As previously noted, the record includes a transcript of Lind's omnibus hearing during which Lind's trial counsel testified concerning the trial strategy that he employed in Lind's case. With that testimony, the record is sufficiently developed regarding Lind's ineffective assistance of trial counsel claims to adequately evaluate the professional representation provided by Lind's trial counsel. The record shows that the performance of Lind's counsel fell well within the broad standard of reasonableness routinely accepted by courts on habeas review.

Turning to Lind's specific claims of ineffective assistance of trial counsel, the undersigned considers the constitutional standard which applies to such claims. The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). While "assistance which is ineffective in preserving fairness does not meet the constitutional mandate . . . defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor*, 535 U.S. 162, 166 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant

must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88, 694. When reviewing counsel's performance, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Moreover, counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," and a court should not allow hindsight to alter its review. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). In addition, trial strategy devised after investigating the law and facts is "virtually unchallengeable." *Bell v. Evatt*, 72 F.3d 421, 429 (4th Cir. 1995).

### 1. Failure to Call Witnesses at Sentencing

Lind first contends that his trial counsel was ineffective because he did not call any witnesses to offer mitigation evidence at his sentencing hearing. (ECF No. 63 at 9). Lind asserts that Dr. Miller could have testified regarding the statement in his report that the drugs and alcohol used by Lind were known to affect memory, reduce behavioral inhibitions, impair judgment, and create high levels of aggression. (*Id*. at 10). Further, Lind argues that his mother could have testified regarding the negative impact of Lind's father's death. (*Id*.). Lind maintains that his trial counsel's failure to put on "available mitigation evidence during sentencing" was objectively unreasonable under *Strickland* and prejudiced him because there was a "[very] strong probability" that he would have received a shorter sentence, if the evidence had been offered. (*Id*. at 11).

"In death penalty cases, counsel must adequately investigate and present evidence in mitigation of guilt at sentencing," but "it has not been held that presentation of

mitigating evidence is required at sentencing in a non-capital case." *Leak v. United States*, No. 3:07-CR-00081, 2011 WL 2971800, at *12 (N.D.W. Va. Feb. 22, 2011), *report and recommendation adopted,* 2011 WL 2971967 (N.D.W. Va. July 20, 2011) (citing *Williams v. Taylor,* 529 U.S. 362, 390–91 (2000). In fact, "[e]ven in a capital case, in assessing a lawyer's performance in this area, the Supreme Court has emphasized that 'Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.'" *Id.* (quoting *Wiggins v. Smith,* 539 U.S. 510, 533 (2003)). In addition, "[a]n allegation that an attorney conducted an inadequate investigation does not warrant relief absent a proffer of the specific favorable evidence the investigation would have brought out." *Campbell*, 2009 WL 6327477, at *11 (citations omitted). "The reasonableness of an investigation made by counsel must be evaluated under the totality of the circumstances facing the attorney" and while counsel could have made a more thorough investigation, in considering claims of ineffective assistance of counsel, the court considers "not what is prudent or appropriate, but only what is constitutionally compelled." *Id.*

Lind cannot establish that he suffered any prejudice from his trial counsel not calling Dr. Miller to testify at sentencing. The state trial judge reviewed Dr. Miller's report multiple times and heard testimony from Dr. Miller during the suppression hearing. (ECF No. 90-2 at 45). Therefore, at the time of Lind's sentencing, the trial judge was undoubtedly well-informed of Dr. Miller's opinions regarding the mental and behavioral effects that resulted from Lind's abuse of drugs and alcohol.

Furthermore, Lind fails to show that his counsel was constitutionally ineffective by not calling Lind's family members and ex-girlfriend to testify at his sentencing. Lind asserts that his mother could have offered testimony regarding the effect that Lind's

father's death had on him at the age of ten. However, Lind testified at trial regarding the death of his father and Dr. Miller's report mentioned that Lind saw school counselors in elementary and high school following his father's death and that he was prescribed Valium at that time. (ECF Nos. 90-3 at 126, 90-11 at 11). Lind offers nothing more than unsupported speculation that he would have received a shorter sentence if his family members and ex-girlfriend testified regarding his personal history and circumstances. Lind does not adduce any specific mitigation evidence that his trial counsel unreasonably overlooked or anything that would have reasonably resulted in a lesser sentence. *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (finding that a petitioner cannot establish ineffective assistance of counsel under *Strickland* on the general claim that additional witnesses should have been called, but instead must proffer evidence of what their testimony would have been); *Slate v. Vargo*, No. 1:12-CV-1477, 2014 WL 3378627, at *7 (E.D. Va. July 8, 2014) ("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on a failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); *Johnson v. McCall*, No. 2:09-1532-P.M.D, 2010 WL 936726, at *4 (D.S.C. Mar. 15, 2010) ("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice."); *United States v. Boysaw*, No. 7:03CR00128-1, 2009 WL 1797869, at *4 (W.D. Va. June 23, 2009) ("Boysaw does not even allege who the other seven witnesses that counsel should have subpoenaed were or what they could have testified to and, thus, he has not shown deficient performance by counsel or prejudice as a result of counsel not calling those seven unknown witnesses."). For such reasons, Lind fails to adduce an ineffective assistance of trial counsel claim that has "some merit" on this ground.

## 2. Motion for Appointment of Co-Counsel

Lind next argues that his trial counsel was constitutionally deficient because he did not "timely file" a motion for appointment of co-counsel, but rather filed the motion "just six days before trial." (ECF No. 63 at 12). Lind asserts that he was prejudiced at trial because the State had two prosecutors with more combined experience than his lone trial attorney. (*Id.*). Lind previously raised a claim in this federal action that the trial court violated his right to due process by denying his motion for appointment of co-counsel. *See* (ECF No. 50 at 11). As the Court discussed, the claim lacked merit because criminal defendants do not have a constitutional right to the appointment of co-counsel, even in capital cases. (*Id.*). For the same reason, Lind's claim that his trial counsel was ineffective under *Strickland* fails. A criminal defendant has a constitutional right to effective counsel under the Sixth Amendment, not any certain number of lawyers. Therefore, Lind's claim that his trial counsel was ineffective because he did not seek co-counsel earlier in the case is without merit.

## 3. Cross-Examination of Steven Jones

Lind next argues that his trial counsel failed to "vigorously cross examine" Jones "by not asking him if he received any favorable treatment in exchange for [his] testimony" against Lind. (ECF No. 63 at 12). Lind also asserts that his trial counsel should have introduced Jones's criminal history to impeach Jones's credibility. (*Id.*).

While a counsel's actions or omissions in cross-examining a witness can raise a claim for ineffective assistance of counsel in certain circumstances, tactical decisions such as determining lines of questioning on cross-examination are generally considered to be a matter of trial strategy. *Hemetek v. United States*, No. 3:08-CR-00198, 2012 WL 3870620, at *7 (S.D.W. Va. Apr. 25, 2012), *report and recommendation adopted,* 2012

WL 3870605 (S.D.W. Va. Sept. 6, 2012), *aff'd,* 527 F. App'x 261 (4th Cir. 2013). "The measure of competence in the context of trial strategy is not made by comparing the defense provided to the best possible defense; rather, the measure is whether the strategy employed by counsel was objectively reasonable." *Id.* (citing *Harrington v. Richter,* 131 S. Ct. 770, 788–90, (2011)).

Jones was not offered immunity or any other kind of consideration or benefit for testifying against Lind. (ECF No. 90-5 at 35). Further, Jones's criminal history was discussed at trial. Jones admitted that he was presently incarcerated on two one-to-ten year sentences for forging and uttering a stolen check and that it would take him a "good bit of time" to even recount all of the "worthless checks" that he had written from his own account that did not have the necessary funds. (ECF No. 90-2 at 276-77). Therefore, Lind fails to demonstrate potentially meritorious grounds that his counsel's cross-examination of Jones was objectively unreasonable or prejudiced the outcome of Lind's trial.

### 4. Photographs of Deadbolt and Scratches

In his next claim of ineffective assistance of counsel, Lind states that his trial counsel failed to introduce photographs of the deadbolt lock on the victim's door and the cuts on Lind's arm, which Lind argues would have demonstrated that Lind killed the victim in self-defense. As noted, Lind adduced a theory at trial that the victim prevented Lind from leaving the apartment, grazed Lind with a knife, and threatened to shoot Lind if Lind did not comply with the victim's sexual demands. According to Lind, he feared for his safety and hit the victim with a hammer in order to obtain the victim's keys to unlock the deadbolt on the door and escape the apartment without the victim stopping him.

Evidence concerning the deadbolt was indeed presented at trial by Lind's attorney. Lind's counsel elicited through cross-examination of the prosecution's witness, Detective

Dana Rowsey ("Detective Rowsey"), that both the front and back doors to the victim's apartment had deadbolt locks that required keys to unlock the doors in order to enter or exit the apartment. (ECF No. 90-2 at 253-55). The jury was also shown a picture of the deadbolt on the victim's front door. (*Id.*). Any assertion by Lind that his trial counsel failed to present evidence that there were deadbolts on the doors in order to support Lind's defense is simply factually incorrect.

Regarding the alleged cuts on Lind's arm, Lind testified at trial that the victim swung a knife at him and barely grazed Lind's left arm twice. (ECF No. 90-3 at 122). Lind was charged with first-degree murder in this case, but the jury ultimately found Lind guilty of second-degree murder. In other words, the jury concluded that Lind acted without premeditation or deliberation. (*Id.* at 190-91) (discussing the difference between first and second-degree murder). At Lind's omnibus hearing, the state court asked Lind why he believed that the jury concluded that he acted without premeditation. Lind responded that it was due to his testimony explaining that there was "an argument, a physical altercation" in which the victim "cut [his] arm just a little bit." (ECF No. 90-6 at 34). However, Lind conceded that the victim "just barely grazed" his arm and it "wasn't even, like, a big scratch." (*Id.* at 34-35). By Lind's own admission, the jury gave weight to Lind's testimony regarding the physical altercation in finding him not guilty of first-degree murder. In light of the above, Lind fails to adduce potentially meritorious claims that his counsel's actions were objectively unreasonable under the circumstances, nor does he show any reasonable likelihood that a picture of an admittedly minor, superficial scratches would have had any further effect on the jury's verdict.

### 5. Forgery of the Victim's Credit Card at McDonald's

In his next claim, Lind contends that his trial counsel failed to seek exculpatory

evidence in the form of a videotape to show that Jones, not Lind, used the victim's credit card at McDonald's. (ECF No. 63 at 13). Further, Lind asserts that his counsel should have requested a jury instruction on aiding and abetting forgery or conspiracy before the fact because he allegedly gave the card to Jones, who used it at McDonald's. (*Id*.).

In his opening statement, Lind's trial counsel asserted that Lind did not go to the victim's apartment with any intent to harm or rob the victim, but that the victim threatened Lind with a knife and Lind killed the victim out of fear for his own life. (ECF No. 90-2 at 162-65). Lind's counsel stated that Lind then took the victim's keys to escape the apartment, but that the victim's wallet happened to be connected by a chain and Lind took it as well. (*Id*. at 165-66). The attorney conceded that Lind subsequently used the victim's credit card from the wallet at a few locations. (*Id*.). (*Id*. at 166). However, counsel emphasized that Lind did not use the credit card for anything "elaborate" or "sexy," but simply bought "some food" at McDonald's and "some tennis shoes." (*Id*.).

Various evidence was offered concerning the use of the credit card at McDonald's. Lind testified that he "gave" the credit card to Jones, who did not "know where the credit card came from," and that it was Jones who presented the credit card to the cashier in the McDonald's drive-through. (ECF No. 90-3 at 125-26). However, Jones conversely testified that Lind used the credit card in question at various businesses, including McDonald's. (ECF Nos. 90-2 at 271-72; 90-3 at 5). Detective Rowsey testified that the video from McDonald's showed Jones driving the car through the McDonald's drive-through, but Detective Rowsey did not state whether the video showed who handed the card to the cashier. (ECF No. 90-2 at 188).

At Lind's state habeas hearing, his trial counsel testified that he consulted with Lind at length regarding the proposed trial strategy to focus on mitigating the charge of

first-degree murder and robbery. (ECF No. 90-5 at 16, 25-27). Lind's trial counsel stated that he believed that Lind would lose credibility with the jury if the defense attacked "each and every charge as if nothing ever happened." (*Id*. at 16). He did not believe that it would have been useful to confront Jones with video from the McDonald's drive-through. (*Id*.).

Lind fails to show that his counsel's trial strategy concerning the forgery charge was so objectively unreasonable that his attorney was not functioning as guaranteed by the Sixth Amendment. According to the trial court's jury instruction, if Lind knowingly obtained or purchased goods at the McDonald's Corporation on April 1, 2006 using the victim's credit card without the authority or consent of the victim, then Lind was guilty of the crime of forgery of a credit card. (ECF No. 90-3 at 200). By Lind's own admission at trial, he gave the credit card to Jones, who did not know that it was stolen, and Jones handed it to the cashier at McDonald's in order to obtain food for Jones and Lind. There was also clear testimony that Jones drove the car through the drive-through. Therefore, given the evidence that was already established, there is no reasonable probability that additional evidence showing that Jones handed the credit card to the cashier or the provision of additional jury instructions would have resulted in a different verdict on the credit card forgery charge. Thus, Lind fails to assert an ineffective assistance of trial counsel claim with "some merit" on this ground.

### 6. *Animus Furandi Jury Instruction*

Lind contends that his trial counsel's representation was deficient because his counsel did not request a jury instruction, or object to the lack of a jury instruction, on *animus furandi* as an essential element of robbery. As discussed, *supra*, the SCAWV's finding that the robbery instruction was proper under West Virginia law is not the proper subject of federal habeas review. Yet, in any event, the instruction was not erroneous.

38

Therefore, Lind fails to adduce a potentially meritorious claim that his trial counsel was constitutionally ineffective by failing to object to the instruction or request an alternative instruction.

### 7. Failure to Raise Sentencing Issue on Appeal

Lind also asserts that his attorney was ineffective because he did not assert on appeal that Lind's sentence was constitutionally excessive. As previously discussed, Lind argued in his state habeas action that his robbery sentence was excessive. The claim was denied on the merits by the SCAWV. Therefore, Lind very clearly cannot show any prejudice from the fact that his trial counsel did not raise the issue on direct appeal because the claim was denied by the very same judicial body on habeas review. "Ineffectiveness based on the failure to argue an issue on appeal is governed by the *Strickland* test, and there can be no deficient performance or prejudice to the defendant in counsel's failure to argue meritless issues at trial, sentencing, or on appeal." *Beamon v. United States*, 189 F. Supp. 2d 350, 357 (E.D. Va. 2002).

### 8. Testimony of Robert Shingleton

Finally, Lind argues that his trial counsel was ineffective because he did not depose Shingleton or ask for a stay in Lind's trial until Shingleton's direct appeal was completed. (ECF No. 63 at 15). According to Lind, Shingleton was a witness that could support his defense because Shingleton had a similar experience with the victim less than two years prior to Lind's offense in March 2006. (*Id.*). Indeed, as shown in Shingleton's criminal case, corollaries can be drawn between Lind and Shingleton's altercations with the victim. In August 2004, 23-year-old Shingleton met the victim near the Tidewater Grill in Charleston, West Virginia. *State v. Shingleton*, 671 S.E.2d 478, 479–80 (2008). Shingleton and the victim engaged in conversation and entered Tidewater Grill where

they drank alcohol purchased by the victim. *Id.* The two men went to another location where they drank more alcohol that the victim purchased, and they eventually took a taxi to the victim's apartment. *Id.* at 480. According to the taxi driver, Shingleton stated that if the victim, who Shingleton referred to as the "queer," wanted to spend his paycheck on Shingleton, then Shingleton would let him. *Id.* At the apartment, the victim put his hand on Shingleton's leg, which caused Shingleton to become nervous and upset. *Id.* Shingleton struck the victim repeatedly in the face, rendering him unconscious, and allegedly stole the victim's wallet. *Id.* The victim was hospitalized for four days, including two days in the intensive care unit, due to blunt force trauma to the face, head, and neck; multiple facial fractures; and substantial blood loss. *Id.* Shingleton was charged with robbery and malicious assault. *Id.* He was tried by jury and convicted only of malicious assault. *Id.* Shingleton filed a direct appeal, arguing that the jury in his case should have been instructed on his theory of self-defense. *Id.* at 482. Shingleton maintained that his actions were based upon his reasonable belief that he was about to be sexually assaulted by the victim. *Id.* The SCAWV affirmed Shingleton's conviction on November 19, 2008. *Id.* at 483.

During Lind's trial, which began in late March 2006, Shingleton's foregoing appeal was not concluded. Lind's trial counsel called Shingleton to testify and Shingleton confirmed that he met the victim at Tidewater Grill, that the victim made a sexual advance toward him, and that the victim provided Shingleton alcohol at the victim's residence. (ECF No. 90-3 at 145-46, 148). However, due to his pending appeal, Shingleton otherwise asserted his Fifth Amendment privilege against self-incrimination upon advice of his counsel and thus did not provide any other information. (*Id.* at 148-49).

Lind asserts that his trial counsel should have deposed Shingleton or requested a

stay in his trial until Shingleton's criminal case was concluded so that Shingleton's testimony could have been offered to the jury to show that the victim had a pattern of making unwanted sexual advances. (ECF No. 63 at 15). However, Shingleton testified that the victim made an unwelcome sexual advance toward him. Therefore, the evidence which Lind states that his trial counsel should have solicited from Shingleton was indeed presented at trial. Moreover, Lind fails to establish what additional critical evidence could have been gleaned from Shingleton's testimony or how it was reasonably likely to affect the outcome of his case. Shingleton was convicted of maliciously assaulting the victim. In other words, like Lind, Shingleton's assault of the victim was deemed to be a disproportionate response to the victim's sexual advance or actions. Lind testified concerning the victim's sexual advances and threats toward him. The jury ultimately gave some credence to the evidence presented by the defense because the jury found Lind guilty of second-degree, not first-degree, murder. Therefore, Lind fails to establish a potentially meritorious claim of ineffective assistance of counsel regarding Shingleton.

### C. Other Errors

#### 1. Defective Indictment

Lind argues that the indictment for first-degree robbery in his case was defective because it did not contain the essential element of *animus furandi*. (ECF No. 63 at 15-17). The indictment charged that Lind "unlawfully and feloniously committed violence, by striking and beating" the victim and "feloniously and violently did steal, take and carry away" the victim's "wallet, Fifth Third Bank Mastercard credit/debit card, keys, and 2005 Dodge Neon," which exceeded the value of $1,000.00. (ECF No. 90-14 at 2). On habeas review, the SCAWV acknowledged that "[a]nimus furandi, or the intent to steal or to feloniously deprive the owner permanently of his property, is an essential element in the

crime of robbery." *Lind*, 2017 WL 4570572, at *6. Given the fact that the indictment alleged that Lind "feloniously committed violence on the victim's person and 'then and there feloniously and violently did steal, take[,] and carry away' specified items of his property," the SCAWV concluded that Lind's indictment for first-degree robbery "met minimal constitutional standards and charged an offense under West Virginia law." *Id.*

"The Fifth Amendment requirement of indictment by grand jury does not apply to the states, and thus variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the petitioner's right to due process." *Navarrete-Garcia v. McCoy*, No. 1:14-CV-00754, 2015 WL 4924619, at *2 n.5 (M.D.N.C. Aug. 18, 2015) (quoting *Hartman v. Lee*, 283 F.3d 190, 195 n.4 (4th Cir. 2002) and *Ashford v. Edwards*, 780 F.2d 405, 407 (4th Cir. 1985)); *Hinnant v. North Carolina*, No. 5:15-HC-2283-FL, 2016 WL 8653490, at *4 (E.D.N.C. June 27, 2016), *appeal dismissed*, 678 F. App'x 158 (4th Cir. 2017); *Horn v. Ballard*, No. 1:07-CV-00503, 2009 WL 915022, at *21 (S.D.W. Va. Feb. 26, 2009), *report and recommendation adopted in part*, 2009 WL 914879 (S.D.W. Va. Mar. 31, 2009).

"The general rule is that the scope of review of a challenged indictment in federal courts upon habeas corpus proceedings is confined to the questions of whether the alleged defects go to the jurisdiction of the trial court or deprive the defendant of the right to be sufficiently informed of the charges against him." *Mechling v. Slayton*, 361 F. Supp. 770, 773 (E.D. Va. 1973); *Munday v. Ballard*, No. 5:12CV135, 2013 WL 3990785, at *12 (N.D.W. Va. Aug. 2, 2013) ("It is clearly established federal law that an indictment is sufficient under the United States Constitution if it, "first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must

defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense [...] Furthermore, the sufficiency of a state charging instrument 'is not a matter for federal habeas corpus relief unless the indictment is so defective that the convicting court had no jurisdiction.'") (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974) and *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994), *cert. denied,* 512 U.S. 1289 (1994)).

In this matter, Lind fails to assert a basis for federal habeas relief. His indictment corresponded to the language of the West Virginia robbery statute and common law. W. Va. Code § 61-2-12(a)(1) (2000) ("Any person who commits or attempts to commit robbery by: Committing violence to the person, including, but not limited to, partial strangulation or suffocation or by striking or beating; or (2) uses the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years."); *Wilkerson*, 738 S.E.2d at 37 (defining robbery as "(1) the unlawful taking and carrying away, (2) of money or goods, (3) from the person of another or in his presence, (4) by force or putting him in fear, (5) with intent to steal the money or goods.").

Lind was reasonably informed of the specific charge against him and the indictment in his case was not so fatally flawed such as to deprive the trial court of jurisdiction or render his trial fundamentally unfair. *See, e.g., Horn*, 2009 WL 915022, at *21 (holding that the habeas petitioner's state indictment satisfied the requirements of due process by adequately informing him of the specific charge against him and "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished" by using the language of the

statute itself); *Munday*, 2013 WL 3990785, at *12 (holding that the indictment was not "so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment.") (quoting *Johnson v. Estelle,* 704 F.2d 232, 236 (5th Cir.1983)); *Hinnant*, 2016 WL 8653490, at *4 (holding that the state court indictment did not render the state court proceeding fundamentally unfair and thus did not warrant habeas relief).

Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established Federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 2. Knowingly Perjured Testimony

Lind next claims that the prosecution in his criminal case knowingly offered Jones's false testimony that Lind handed the victim's credit card to the cashier at McDonald's, although the prosecution purportedly knew from the McDonald's video clip that Lind did not do so. (ECF No. 63 at 17). Lind states that "a prosecutor's known use of perjured testimony or knowing failure to disclose that testimony used to convict a defendant was false [is a] violation of due process, and the conviction must be set aside if there is a reasonable likelihood that the false testimony could have affected the judgment." (*Id.* at 18).

"[I]t is well-established that due process is contravened where the prosecution's case included perjured testimony and 'the prosecution knew, or should have known, of the perjury.'" *Jones v. Seifert*, 808 F. Supp. 2d 900, 920 (S.D.W. Va. 2011) (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976) and *Napue,* 360 U.S. at 269 ("[A] conviction obtained through use of false evidence, known to be such by representatives of

44

the State, must fall under the Fourteenth Amendment.")). "The same is true even when the prosecution does not solicit false evidence at trial but 'allows it to go uncorrected when it appears.'" *Id.* (quoting *Napue,* 360 U.S. at 269). "The conviction must be set aside if the false evidence presented a trial was 'material,' *i.e.,* if it could 'in any reasonable likelihood have affected the judgment of the jury.'" *Id.* (quoting *Napue,* 360 U.S. at 271 and citing *Giglio v. United States,* 405 U.S. 150, 154, (1972)).

On habeas review, the SCAWV denied Lind relief on this claim, stating that "nothing in the record indicate[d] that any witness committed perjury" in Lind's trial or "that the State knowingly presented the same to the jury." *Lind*, 2015 WL 5125884, at *6. Reviewing the record in this case, Jones testified at Lind's trial that Lind used the victim's credit card to pay for items at McDonald's, whereas Lind conversely stated that he did not do so. (ECF Nos. 90-2 at 271-72, 90-3 at 125). There was testimony from Detective Rowsey that Jones drove the victim's car through the McDonald's drive-through, but no other evidence concerning who handed the credit card to the cashier. (ECF No. 90-2 at 188). Therefore, Lind fails to offer evidence to overcome the state court's presumptively correct factual findings. *Jones*, 808 F. Supp. 2d at 920 (citing 28 U.S.C. § 2254(e)(1)). Lind fails to show that Jones's testimony was false, that the prosecution knew or should have known that it was false, and that it was material to the jury's verdict. Simply stated, Lind does not offer any evidence to demonstrate that the McDonald's surveillance video showed Jones handing the credit card to the cashier at McDonald's and that the prosecution knew or should have known of its falsity.

Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established Federal law, nor was it based upon an unreasonable determination of the facts presented

in the state proceeding.

### 3. Insufficient Evidence to Support Forgery Conviction

In his final claim for federal habeas relief, Lind asserts that there was insufficient evidence to support his conviction for forgery of a credit card at McDonald's. (ECF No. 63 at 31). Lind states that the video clip from McDonald's did not show him handing the victim's credit card to the cashier, nor did he sign a credit card receipt. (*Id*.). According to Lind, if this jury had been shown the video and advised that Lind did not sign a credit card sale receipt, the jurors would not have found him guilty on that count of forgery of a credit card. (*Id*.).

Lind first raised this claim in his amended third state habeas petition. (ECF No. 90-10 at 6). The state court found that the ground was procedurally barred because Lind did not previously raise it and it did not allege ineffective assistance of habeas counsel, newly discovered evidence, or a change in law. (*Id*. at 9). However, the state court briefly addressed the issue, stating that "the trial record reflect[ed] sufficient evidence to support [Lind's] conviction of the forgery offense." (*Id*. at 10). On appeal, the SCAWV affirmed the state court's ruling. *Lind*, 2017 WL 4570572, at *6.

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial" and a "reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Moreover, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court," but "may do so only if the state court decision was 'objectively unreasonable.'" *Id*. (citation omitted). "[E]vidence is sufficient to support a conviction so long as 'after viewing the evidence in

46

the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 7 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

West Virginia Code § 61–3–24a(c) provides that "[a] person is guilty of forgery of a credit card when he or she makes, manufactures, presents, embosses, alters or utters a credit card with intent to defraud any person, issuer of credit or organization providing money, goods, services, or anything else of value in exchange for payment by credit card." In Lind's case, the jury was instructed that Lind was guilty of the crime of forgery of a credit card if the jury found beyond a reasonable doubt that Lind knowingly obtained or purchased goods at the McDonald's Corporation on April 1, 2006 using the victim's credit card without the authority or consent of the victim. (ECF No. 90-3 at 200).

It is clear based on the trial record that a rational trier of fact could have found Lind guilty of forgery of the victim's credit card at McDonald's in violation of West Virginia Code § 61–3–24a(c). Jones testified that Lind used the victim's credit card to pay for items at McDonald's. (ECF No. 90-2 at 271-72). This evidence supported Lind's conviction for forgery of a credit card. Admittedly, the jury was also presented with arguably competing testimony from a detective, stating that the video from McDonald's showed Jones driving the victim's car through the drive-through, and testimony from Lind that he gave the credit card to Jones, who handed it to the cashier at McDonald's. (ECF Nos. 90-2 at 188, 90-3 at 125). However, it was the role of the jury, not this federal habeas court, to weigh and consider this evidence, make inferences, determine the credibility of the statements, and resolve factual issues.

Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established

47

Federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### D. Additional Claims Asserted in Supplemental Petition

#### 1. *McCoy v. Louisiana*

Lind argues that his counsel was constitutionally ineffective under the recent precedent established in *McCoy*. McCoy was charged with murdering his estranged wife's family. *McCoy*, 138 S. Ct. at 1503. Despite McCoy's insistence that he was innocent and his adamant objection to any admission of guilt, the trial court permitted McCoy's attorney to tell the jury during the guilt and penalty phases of McCoy's trial that McCoy committed the murders. *Id.* Counsel's strategy was to focus on McCoy's mental and emotional issues and argue that McCoy lacked the specific intent to commit first-degree murder. *Id.* On appeal, the Supreme Court of the United States ("Supreme Court") held that "[t]he Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." *Id.* The Supreme Court discussed a defendant's right of autonomy and the fact that a defendant "does not surrender control entirely to counsel." *Id.* The Supreme Court explained that a lawyer's province is trial management, but certain decisions are reserved for the client, such as "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.*

In this case, one of Lind's credit card forgery convictions stemmed from the use of the victim's credit card in the McDonald's drive-through after the murder. Lind argues that his trial counsel violated *McCoy* by not adducing any defense to the McDonald's credit card forgery charge despite Lind's protestations that he was innocent because he

did not personally hand the credit card to the McDonald's cashier. As noted, Lind asserted that he had passed the card to his friend, Jones, who did not know that it was stolen and pulled it from his own wallet to pay for the food in the drive-through as Lind sat beside him in the vehicle. According to Lind, his counsel's failure to contest the charge equated to an admission of guilt like the attorney's erroneous actions in *McCoy*. (ECF No. 107 at 3).

On appeal of Lind's fourth state habeas petition, the SCAWV noted that a prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and all matters known or which with reasonable diligence could have been known. (ECF No. 111-4 at 4). However, the SCAWV advised that an applicant could still petition the court on the grounds of ineffective assistance of counsel at the omnibus corpus hearing or a change in law that was favorable to the applicant and which may be applied retroactively. (*Id.*).

The SCAWV found that Lind did not make any argument that *McCoy* could be retroactively applied to cases that were final before it was decided. (ECF No. 111-4 at 5). In addition, the SCAWV concluded that *McCoy* was factually distinguishable. (*Id.*). It noted that, unlike the defendant's counsel in *McCoy*, Lind's attorney made no concession regarding the third count of forgery of a credit card. (*Id.*). The SCAWV explained that, while the record reflected that trial counsel's strategy was to focus the defense on the charges of first-degree murder and first-degree robbery, given the severity of those crimes and potential penalties, Lind pointed to nothing indicating that his attorney conceded his guilt to the credit card forgery charge. (*Id.*). Therefore, the SCAWV rejected Lind's contention that *McCoy* represented a change in law that was favorable to him. (*Id.*).

The SCAWV's ruling on this claim is well supported. As noted by another district court in the Fourth Circuit, *McCoy* does not apply to cases that were final before it was

decided. *Smith v. Hooks*, No. 5:17-HC-2103-BO, 2018 WL 9815045, at *8 (E.D.N.C. Sept. 19, 2018). The Supreme Court has not stated that *McCoy* is retroactive to cases on collateral review. *Id.* ("[T]he Supreme Court made it clear that a constitutional right can only be "made" retroactive by a holding of the Supreme Court. *See Tyler [v. Cain]*, 533 U.S. [656,] 664 (holding that a "new rule of constitutional law" is "made retroactive to cases on collateral review by the Supreme Court" only if the Supreme Court holds as much); *see also Griffin v. Ransom*, No. 5:16-HC-2149-FL, 2017 WL 1628883, at *2 (E.D.N.C. Apr. 28, 2017) ("The Supreme Court is the only entity that can make a rule retroactive"), *appeal dismissed*, 699 F. App'x 180 (4th Cir. 2017)). Also, *McCoy* does not satisfy the analysis under *Teague v. Lane*, 489 U.S. 288, 311 (1989) because it did not create a new rule that forbade a criminal punishment of a certain individual act or a "watershed" rule of criminal procedure, which  is rule which "must be necessary to prevent 'an impermissibly large risk' of inaccurate conviction" and "must 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Id.* (citing *Whorton v. Bockting*, 549 U.S. 406, 418 (2007). Rather, "the *McCoy* court explained that its holding was simply the logical extension of the previous recognition that 'some decisions ... are reserved for the client—notably, whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal.'" *Id.* (quoting *McCoy*, 138 S. Ct. at 1508).

Moreover, even if *McCoy* applied retroactively to Lind's case, Lind does not cite any facts, nor does the undersigned find any facts in the record, to suggest that his attorney conceded his guilt to the credit card forgery charge. Lind asks the Court to extend the *McCoy* holding to his counsel's strategical decision to primarily focus Lind's defense on the murder and robbery charges. However, his counsel's decision not to belabor the

defense as to one of Lind's three credit card forgery charges was not an admission of guilt to that charge. Lind very clearly testified at trial that he stole the victim's wallet; used the victim's credit card twice; and then gave the victim's credit card to his friend, Jones, who did not know "where the credit card came from." (ECF No. 90-3 at 123, 125, 126). He stated at trial, "on the occasion at McDonald's, I didn't […] use the credit card. [Jones] pulled it out of his wallet and handed it to the clerk through the drive-thru." (*Id.* at 125). Therefore, it is unclear what other information Lind suggests that his attorney should have developed or offered regarding the use of the credit card at McDonald's. In any event, Lind does not cite a scintilla of authority to suggest that the *McCoy* ruling has been extended to the facts presented in this case. Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established Federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

### 2. *Habeas Counsel*

In his final claim, Lind asserts that his habeas counsel failed to investigate and raise the claim that his trial counsel was ineffective by failing to offer available mitigation evidence during Lind's sentencing hearing in the form of testimony from Dr. Miller and Lind's family. (ECF Nos. 107 at 4-15, 104-1 at 15). Lind contends that the state court did not adjudicate the ineffective assistance of trial counsel at sentencing claim because it did not allow further development of it, and this Court should thus grant an evidentiary hearing to resolve the issue. (ECF No. 107 at 10-11).

On this issue, the SCAWV found that it already ruled in Lind's second state habeas petition that there were no grounds on which to base any allegation of ineffective assistance of trial counsel. (ECF No. 111-4 at 5). Therefore, the SCAWV stated that Lind's

trial counsel's alleged ineffectiveness had been previously and finally adjudicated and could not be resurrected under the guise of ineffective assistance of habeas counsel. (*Id.*).

Here, Lind merely reformulates the claim previously considered that his trial counsel should have called witnesses to offer mitigation testimony at his sentencing hearing. For the reasons discussed, the undersigned **FINDS** that Lind fails to demonstrate that his procedurally defaulted claims of ineffective assistance of trial counsel are potentially meritorious. Consequently, those claims do not qualify for *de novo* review under the *Martinez* exception. However, even if the Court were to perform a *de novo* review, Lind's ineffective assistance of trial counsel claims would not provide a basis for habeas relief because Lind's trial counsel was not constitutionally deficient. As stated, the trial court was well versed in Dr. Miller's opinions after reviewing Dr. Miller's report and hearing his testimony during the suppression hearing. (ECF No. 90-2 at 45). Furthermore, Lind offers nothing more than unsupported speculation that he would have received a shorter sentence if his family members and ex-girlfriend testified regarding his personal history and circumstances. Indeed, Lind himself testified regarding such issues. (ECF Nos. 90-3 at 126, 90-11 at 11).

As far as Lind's request for an evidentiary hearing to develop this claim, as the undersigned previously stated, the record includes a transcript of Lind's omnibus hearing during which Lind's trial counsel testified concerning the trial strategy that he employed in Lind's case. Considering that testimony, the record is sufficiently developed regarding Lind's ineffective assistance of trial counsel claims to adequately evaluate the professional representation provided by Lind's trial counsel. The record shows that the performance of Lind's counsel fell well within the broad standard of reasonableness routinely accepted by courts on habeas review.

Therefore, the undersigned **FINDS** that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established Federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

## IV.    <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1.   Lind's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF Nos. 63, 88, 107), be **DENIED**;

2.   Lind's motion for leave to file *Martinez* brief, (ECF No. 94), and Lind's motion seeking to be appointed counsel, conduct discovery, provide supplemental information, and request an evidentiary hearing, (ECF No. 95), be **DENIED**, as moot;

3.   This action be **DISMISSED, with prejudice.**

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Petitioner and counsel of record.

**FILED:**  December 2, 2020

Cheryl A. Eifert
United States Magistrate Judge