**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JONATHAN JOSEPH LIND,

                    Petitioner,

v.                                    CIVIL ACTION NO.   2:14-cv-26284

DAVID BALLARD,

                    Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner Jonathan Lind's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, (ECF Nos. 63, 107).  By Standing Order, this matter was referred to United States Magistrate Judge Cheryl A. Eifert for submission of proposed findings and a recommendation for disposition ("PF&R").  (ECF No. 9.)

On October 31, 2018, Magistrate Judge Eifert filed a PF&R ("First PF&R"), recommending that this Court deny Petitioner's Petition for Writ of Habeas Corpus, as well as other pending motions, and dismiss this matter from the Court's docket.  (ECF No. 99.)  Petitioner filed objections to the First PF&R on December 4, 2018.  (ECF No. 103.)  Subsequently, this Court stayed the case to allow Petitioner to pursue state court remedies for his unexhausted claims.  (ECF No. 105.)  Then, on February 13, 2020, Petitioner filed a Supplement to his Petition for Writ of Habeas Corpus, (ECF No. 107), and the stay was lifted on April 1, 2020, (ECF No. 109).  On December 2, 2020, Magistrate Judge Eifert filed another PF&R ("Second PF&R"), (ECF No. 113), which, other than addressing Petitioner's supplemental claims, (ECF No.

1

107), was substantially the same as the First PF&R.[1]   Petitioner filed objections to the Second

PF&R on December 17, 2020.   (ECF No. 116.)

For the reasons discussed herein, the Court **OVERRULES** Petitioner's objections, (ECF

Nos. 103, 116), **ADOPTS** the Second PF&R to the extent consistent with this Memorandum

Opinion and Order, (ECF No. 113), **DENIES** Petitioner's Amended Petition for a Writ of Habeas

Corpus, (ECF Nos. 63, 107), and **DISMISSES** this matter **WITH PREJUDICE**.

## I.   BACKGROUND

A detailed recitation of the extensive facts of this action can be found in Magistrate Judge

Eifert's PF&R, (ECF No. 113), and therefore need not be repeated here.   The Court will provide

a discussion of any relevant facts as necessary throughout this opinion to resolve Petitioner's

objections.

## II.   STANDARD OF REVIEW

### A.   Review of Magistrate Judge's Findings and Recommendations

The Court is required to "make a *de novo* determination of those portions of the report or

specified proposed findings or recommendations to which objection is made."   28 U.S.C. §

636(b)(1)(C).   However, the Court is not required to review, under a *de novo* or any other

standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings

or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150

(1985).   In addition, this Court need not conduct a *de novo* review when a plaintiff "makes general

and conclusory objections that do not direct the Court to a specific error in the magistrate's

proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

---

[1] As both PF&Rs are substantially the same, (*see* ECF Nos. 99, 113), the Court will refer to both documents as "the PF&R," but will identify the specific PF&R if they differ.

In reviewing those portions of the PF&R to which Plaintiff has objected, this Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.  Habeas Corpus Standard of Review

A federal court may grant habeas relief for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."  *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999), *aff'd*, 528 U.S. 225 (2000).

Section 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for a deferential standard of review to be applied to any claim that was "adjudicated on the merits" in state court proceedings.   In such a case, a federal court may grant habeas relief only if the adjudication of the claim in state court

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d)(1) describes the standard of review to be applied to claims challenging how the state courts applied federal law.   "A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts."  *Bell v. Cone*, 535 U.S. 685, 694 (2002).   "The court may grant relief

under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." *Id.* The latter inquiry focuses on whether the state court's application of clearly established federal law was "unreasonable," as distinguished from whether it was "correct." *See Renico v. Lett*, 559 U.S. 766, 773 (2010); *Bell*, 535 U.S. at 694; *Williams v. Taylor*, 529 U.S. 362, 410 (2000).

Section 2254(d)(2) describes the standard to be applied to claims challenging how the state courts determined the facts. "[A] determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "The phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor*, 170 F.3d 466, 475 (4th Cir. 1999); *see also Harrington v. Richter*, 562 U.S. 86, 98 (2011) (recognizing that § 2254(d) applies even if the state court issued a summary decision unaccompanied by an explanation). The state court determination will be upheld so long as "fairminded jurists could disagree" on its correctness. *Yarbrough v. Alvarado*, 541 U.S. 652, 664 (2004).

## III. DISCUSSION

Petitioner asserts fifteen objections to the PF&R. (*See* ECF Nos. 103, 116.) The objections are verbose and at times difficult to comprehend. Some of these objections are overlapping and have been consolidated for clarity. Each is discussed below.

### A. Claim Characterization Objections

Petitioner makes two separate objections to the PF&Rs' characterizations of his claims. First, Petitioner objects to language used in the Relevant Facts and Procedural History section of the First PF&R, (ECF No. 99 at 5 ("[Petitioner] filed a third state habeas petition on the basis that his state habeas counsel failed to assert additional grounds for relief")), because he claims it implies that his third habeas petition was solely based on claims that his habeas counsel failed to raise certain claims, when his third habeas petition was based on his habeas counsel's failure to "**fully develop and raise** all constitutional issues," (ECF No. 103 at 1-2 (emphasis in original)).   Second, Petitioner objects to the Second PF&R's classification of his *McCoy v. Louisiana*[2] claim as an ineffective assistance of counsel claim.   (*See* ECF No. 116 at 2.)

However, Petitioner fails to explain how these characterizations changed the substantive analyses in the PF&Rs.[3]   Rather, this Court finds that the Second PF&R fully analyzed all errors alleged in Petitioner's federal habeas petition, and the specific characterizations of the underlying claims did not alter the legal analyses or conclusions.[4]

Accordingly, the Court **OVERRULES** Petitioner's objections with respect to the characterization of his claims.

B. *Objections for Not Addressing Arguments*

---

[2] In *McCoy*, the Supreme Court of the United States held that "[t]he Sixth Amendment guarantees a defendant the right to choose the objective of his defense and to insist that his counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty." 138 S. Ct. 1500, 1503 (2018).
[3] Specifically, the First PF&R analyzed each of Petitioner's ineffective assistance of counsel claims, (*see* ECF No. 99 at 24-40), and the Second PF&R determined that *McCoy* could not be applied retroactively and, even if it could, there are no facts in the record to support a *McCoy* claim, (ECF No. 113 at 48-51).
[4] Additionally, the Second PF&R changed the language in the Relevant Facts and Procedural History section that was the basis of Petitioner's first objection.   (*See* ECF No. 113 at 5 ("[Petitioner] filed a third state habeas petition on the basis that his state habeas counsel failed to fully develop and raise additional grounds for relief").)

Next, Petitioner faults the PF&R for not addressing two of his arguments.   First, he claims that the PF&R failed to discuss the argument that his indictment was defective because the grand jury was not presented with the essential element of *animus furandi*.   (ECF No. 103 at 21; *see also* ECF No. 63 at 15-17 (reasoning that, although the word "unlawfully" was presented, it was insufficient).)   Second, Petitioner claims that the PF&R failed to discuss his argument that the prosecution did not investigate "Steven Jones committing perjury regarding the McDonald's forgery."   (ECF No. 103 at 21-22.)   However, the PF&R addressed both of these arguments.

As to his defective indictment argument, the PF&R explained:

> The Fifth Amendment requirement of indictment by grand jury does not apply to the states, and thus variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the petitioner's right to due process. The general rule is that the scope of review of a challenged indictment in federal courts upon habeas corpus proceedings is confined to the questions of whether the alleged defects go to the jurisdiction of the trial court or deprive the defendant of the right to be sufficiently informed of the charges against him.

(ECF Nos. 99 at 41; 113 at 42 (internal quotations and citations omitted).)

The PF&R also identified *animus furandi* as "the intent to steal or to feloniously deprive the owner permanently of his property," and recalled that the indictment alleged that Petitioner "feloniously and violently did steal, take[,] and carry away' specified items of [the victim's] property[.]"   (ECF Nos. 99 at 40-41; 113 at 41-42 (quoting *Lind v. Ballard*, No. 16-1033, 2017 WL 4570572, at *6 (W.Va. Oct. 13, 2017).)

Similarly, as to investigating the alleged perjury, the PF&R cited the Supreme Court of Appeals of West Virginia's ("WVSCA") opinion affirming the denial of Petitioner's second state habeas matter, which found that "nothing in the record indicate[d] that any witness committed

perjury" in Petitioner's trial or "that the State knowingly presented the same to the jury," (ECF Nos. 99 at 44; 113 at 45 (quoting *Lind v. Ballard*, No. 14-0116, 2015 WL 5125884, at *6 (W.Va. Aug. 31, 2015).)   Further, the PF&R explained that, although Steven Jones ("Jones") and Petitioner presented contradicting testimony on who handed the credit card to the cashier at McDonald's, Petitioner failed "to offer evidence to overcome the state court's presumptively correct factual findings" because he did not "show that Jones's testimony was false, that the prosecution knew or should have known that it was false, and that it was material to the jury's verdict."   (ECF Nos. 99 at 44; 113 at 45.)

Accordingly, the Court finds that the Magistrate Judge did address these issues and **OVERRULES** Petitioner's objections to the extent they assert otherwise.

### C.  *Evidentiary Dispute Objection*

In his second state habeas petition, Petitioner claimed that his right to due process was violated when the trial court refused to instruct the jury on larceny as a lesser-included offense of robbery.   *Lind*, 2015 WL 5125884, at *6.   In affirming the circuit court's denial of Petitioner's second state habeas petition, the WVSCA found that there was insufficient conflict in the evidence to warrant an instruction on the lesser-included offense of larceny.   *Id*.   In the instant petition, Petitioner avers that the jury should have also been instructed on larceny because his intent to take property from the victim was not formed until after he killed the victim.   (ECF No. 63 at 2.)

In capital cases, due process requires the court to give an instruction on any lesser included offense when the evidence warrants such an instruction.   *Beck v. Alabama*, 447 U.S. 625, 637-38 (1980).   To that extent, "larceny is a lesser-included offense in robbery" under West Virginia law. Syl. Pt. 5, *State v. Neider*, 295 S.E.2d 902 (W.Va. 1982).   However, "[a] lesser-included offense

instruction is only proper where the charged greater offense requires the jury to find a *disputed factual element* which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 350 (1965) (emphasis added).

Further, alleged errors in the instructions given by a trial court are not generally cognizable on federal habeas review, because they raise issues of state law, not federal constitutional law. *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960).   Rather, a federal court may grant habeas relief only when the challenged instruction "by itself so infected the entire trial that the resulting conviction was 'undesirable, erroneous, or even universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973).   The Fourth Circuit has explained that

> [w]here the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law. Accordingly, the circumstances that would induce a federal court to overturn the state court determination would need to be extraordinary, indeed.

*Bates v. Lee*, 308 F.3d 411, 418 (4th Cir. 2002) (internal quotations and citations omitted).

As such, on collateral review of a state trial court's jury instructions, a federal court "exercises a limited role," *Smith v. Bordenkicher*, 718 F.2d 1273, 1276 (4th Cir. 1983), and "the inquiry is narrow," *Murphy v. Holland*, 776 F.2d 470, 476 (4th Cir. 1985) (citing *Smith*).   The "only question" is whether the state court's finding that there was insufficient evidence to support a lesser included instruction "was so wrong as to amount to a fundamental miscarriage of justice." *Bates*, 308 F.3d at 418.

In this case, the Magistrate Judge found that the state court's adjudication of this claim was not contrary to or involving an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding.

Specifically, the PF&R explains that there was no evidentiary dispute that would require a larceny instruction because Petitioner testified that he struck the victim with a hammer in order to take the victim's keys without the victim's consent.   (ECF Nos. 99 at 11; 113 at 12.)

Now, Petitioner objects because the PF&R "made an erroneous finding of fact and conclusion of law regarding the Room for Dispute language in *Beck*[.]"   (ECF No. 103 at 3.) Specifically, Petitioner claims that the PF&R failed to consider the State's decision not to pursue a felony murder charge because if the State was certain it could win its case "and secure a conviction for first degree murder," it "would have pursued Felony Murder because [r]obbery is one of the underlying felonies under the felony murder rule."   (*Id.* at 2-3.)   Petitioner also argues that, although the jury was not given an opportunity to find him guilty of the lesser included offense of larceny, it "was given that option on the murder" and "did exactly that" by finding Petitioner guilty of second-degree murder, rather than first-degree murder.   (*Id.* at 2.)   Thus, Petitioner claims that the jury did not believe the State had met its burden.   (*Id.*)   Petitioner is misguided.

To start, *Beck* does not apply to Petitioner's case because the Supreme Court of the United States ("the Supreme Court") explicitly limited its holding to capital offenses.   447 U.S. at 628 n. 14 ("We need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case.").   Further, the State had separate, respective burdens as to Petitioner's charges for murder and robbery, which have completely different elements.   *Compare* West Virginia Code § 61–2– 1 *with* West Virginia Code § 61–2–12(a).   Thus, neither the State's litigation strategy nor the jury's verdict of second-degree murder created a "disputed factual element" on when Petitioner formed the intent to take the victim's property, *see Sansone*, 380 U.S.

at 350, not to mention one that was so "extraordinary" that would constitute a "fundamental miscarriage of justice," *see Bates*, 308 F.3d at 418.

Consequently, the state court's decision was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts presented in the state proceedings, and therefore habeas relief is not warranted. Accordingly, the Court **OVERRULES** Petitioner's objection to this portion of the PF&R.

D.   Ake v. Oklahoma *Objections*

In his second state habeas petition, Petitioner asserted that he was denied his right to confrontation and cross examination when the trial court failed to consider Dr. Bobby Miller's ("Dr. Miller") expert report concerning Petitioner's mental competency at the time of the crime and denied Dr. Miller the opportunity to testify regarding the impact of drugs and alcohol on Petitioner's behavior and judgment.  *Lind*, 2015 WL 5125884, at *6.  In affirming the circuit court's denial of this claim, the WVSCA found that Petitioner was not denied the right to present a diminished capacity defense because Dr. Miller determined that Petitioner was able to form the specific intent to commit the crimes charged.  *Id.*  Petitioner now raises the same claim in his federal habeas petition.  (*See* ECF No. 63 at 9.)

The constitutional foundation for this challenge exists because a defendant's "right to due process guarantees 'the right to a fair opportunity to defend against the State's accusations . . . .'" *United States v. Jinwright*, 683 F.3d 471, 482–83 (4th Cir. 2012) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973)).  In other words, a criminal defendant has the right to present a defense, including offering the testimony of witnesses and compelling witness attendance. *Washington v. Texas*, 388 U.S. 14, 19 (1967).  However, that right is not unlimited.  *See United*

*States v. Scheffer*, 523 U.S. 303, 308 (1998) (recognizing defendant's right to present relevant evidence is subject to reasonable restrictions). "A defendant's interest in presenting such evidence may . . . bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal citations omitted). The exclusion of evidence as a result of accommodating these other legitimate interests is only unconstitutional where the exclusion "has infringed upon a weighty interest of the accused" or "significantly undermined the fundamental elements of the defendant's defense." *Id.* at 308, 315.

Here, the PF&R first noted that a state court's resolution of an evidentiary question generally does not give rise to a cognizable claim under § 2254. (ECF Nos. 99 at 15; 113 at 16.) However, the Magistrate Judge also found that the state court's adjudication of this claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor was it based upon an unreasonable determination of the facts presented in the state proceeding because Dr. Miller found that Petitioner did not evidence diminished capacity. (ECF Nos. 99 at 15; 113 at 16). As such, the exclusion of his testimony did not undermine Petitioner's defense. *See Scheffer*, 523 U.S. at 308. Petitioner objects because "[t]he [s]tate's adjudication of this claim was contrary to *Ake v. Oklahoma*," and thus was not entitled to a presumption of correctness, (ECF No. 103 at 5-6), and the PF&R did not determine if *Ake v. Oklahoma* applies during sentencing, (ECF No. 116 at 10).[5]

In *Ake*, the Supreme Court held that a defendant is entitled to the appointment of a psychiatric expert: (1) "when a defendant demonstrates to the trial judge that his sanity at the time

---

[5] Petitioner also objected to the "finding that Petitioner did not present any evidence of a mental disease[.]" (ECF No. 103 at 4.) However, the PF&R does not include such a finding. (*See* ECF Nos. 99 at 12; 113 at 13 (acknowledging Dr. Miller's opinion that Petitioner suffered from polysubstance abuse/dependence and a mental disease or defect).)

of the offense is to be a significant factor at trial" and (2) "in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness." 470 U.S. 68, 83 (1985).   However, *Ake* cannot serve as a basis for Petitioner's habeas relief for two reasons.   As to expert testimony at trial, Petitioner's sanity was not "a significant factor," because Dr. Miller evaluated Petitioner's sanity at the time of the offense and determined that Petitioner did not evidence diminished capacity and was able to form the intent to commit the charged offenses.   (*See* ECF No. 90-11.)   As to expert testimony at sentencing, the Supreme Court explicitly limited its analysis to the context of *capital cases* when discussing the necessity of an expert at sentencing.   *Ake*, 470 at 83; *but compare id*. at 87 (Burger, J. concurring) ("Nothing in the Court's opinion reaches non-capital cases") *with id.* at 87 (Rehnquist, J. dissenting) ("the constitutional rule announced by the Court is far too broad. I would limit the rule to capital cases").

Consequently, the state court's decision was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts presented in the state proceeding, and therefore habeas relief is not warranted.   Accordingly, this Court **OVERRULES** Petitioner's objections with respect to this portion of the PF&R.

### E. Excessive Sentence Objections

In his second state habeas petition, Petitioner argued that his sentence was unconstitutionally excessive, alleging that he was being punished for a more severe crime than he was convicted.   *Lind*, 2015 WL 5125884 at *5.   In affirming the circuit court's denial of Petitioner's claim, the WVSCA found that Petitioner's sentence was not so disproportionate as to violate the Constitution.   *Id.*   The WVSCA also stated that, under West Virginia law, "[s]entences imposed by the trial court, if within statutory limits and if not based on some

[im]permissible factor, are not subject to appellate review." *Id.* (quoting Syl. Pt. 3, *State v. Georgius*, 696 S.E.2d 18 (W.Va. 2010). Petitioner raises the same claim in his federal habeas petition. (ECF No. 63 at 23.)

The PF&R first noted that Petitioner does not assert a basis for relief under § 2254 because he was not sentenced to death or life imprisonment without the possibility of parole. (ECF Nos. 99 at 21; 113 at 22-23.) The PF&R also noted that Petitioner's robbery charge was within the statutory range set by the West Virginia legislature and was comparable to other robbery sentences that have been upheld in West Virginia. (*See* ECF Nos. 99 at 21-22; 113 at 22-23.) Further, the Magistrate Judge found that the state court's denial of Petitioner's excessive sentence claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, nor based upon an unreasonable determination of the facts. (ECF Nos. 99 at 22; 113 at 23.) Petitioner makes several, overlapping objections.

To start, Petitioner objects to the PF&R's characterization that "Petitioner is focused on the robbery" because he "has maintained that his total sentence (33 to 150 years) is excessive and unconstitutional." (ECF No. 116 at 11.) However, his federal habeas petition clearly argues that his "sentence was excessive and too severe in that the trial court sentenced Petitioner for first degree robbery as punishment for both robbery and first degree murder, even though Petitioner was only convicted of second degree murder." (ECF No. 63 at 23.) Petitioner goes on to claim that his 80-year sentence for first-degree robbery was "a back door mechanism" of punishing him for first-degree murder, for which he was not convicted. (*Id.*) Throughout his claim, Petitioner discusses certain factors he believes the state court should have considered, including that "[m]ost jurisdictions do not impose a sentence of 80 years for robbery." (*Id.* at 26-27.) At no point does

he discuss his murder or forgery convictions. Still, the Court will address his entire sentence below.

Next, Petitioner faults the PF&R for not responding to his argument that because "West Virginia does not have a clear definition on 'the impermissible factor prong' in reviewing excessive sentence claims . . . it cannot be said that the facts were reasonably determined."[6] (ECF No. 103 at 6 (referencing ECF No. 93 at 8).) Petitioner also argues that the PF&R failed to respond to his argument about various factors Petitioner thinks the trial court should have considered in determining his sentence. (ECF No. 103 at 6 (citing ECF No. 63 at 26-29).)[7] However, these arguments regarding the impermissible factor prong are based on state law and, thus, cannot form the basis of a cognizable federal habeas corpus claim. *See Weeks*, 176 F.3d at 262 ("[W]hen a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law." (citations omitted)).

Petitioner's claim also fails to the extent that it is brought under the Eighth Amendment.[8] The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. Amend. VIII. The Supreme Court has recognized that the Eighth Amendment "prohibits not only barbaric punishments, but

---

[6] Similarly, Petitioner objects that if, "for the sake of argument," the PF&R relied on any case that may have the legal definition of "[i]mpermissible factor" after Petitioner was sentenced, "such reliance is clearly wrong on a legal basis." (ECF No. 116 at 11.)

[7] Petitioner also points to one of those specific factors in arguing that that PF&R did not consider what other states give for the same offense. (ECF No. 103 at 7 (citing ECF No. 63 at 27). The Court will address this factor below.

[8] The Eighth Amendment applies to the States through the Fourteenth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991).

14

also sentences that are disproportionate to the crime committed." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980). "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishment is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida*, 560 U.S. 48, 59 (2010) (quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)).

The Supreme Court identified three "objective" factors for courts to consider in determining whether a sentence violates the proportionality principle: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for the commission of the same crime in other jurisdictions. *Solem*, 463 U.S. at 290–92. The Fourth Circuit has "consistently and repeatedly held that the Eighth Amendment proportionality review 'is not available for any sentence less than life imprisonment without possibility of parole.'" *United States v. Wellman*, 716 F.Supp.2d 447, 457–58 (S.D. W.Va. 2010) (citing *United State v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009)); *United States v. Rhodes*, 779 F.2d 1019, 1027-28 (4th Cir. 1985), *cert. denied*, 476 U.S. 1182 (1986); *United States v. Guglielmi*, 819 F.2d 451, 457 (4th Cir. 1987), *cert. denied*, 484 U.S. 1019 (1988). However, this Court has engaged in a proportionality analysis guided by *Solem* when a defendant's sentence is a *de facto* life sentence. *Wellman*, 716 F.Supp.2d at 460–61.

Here, Petitioner's sentence is not a *de facto* life sentence. Petitioner was sentenced to 40 years for second degree murder, 80 years for the robbery, and 1-10 years for each of three forgery counts[9] on June 1, 2007, *Lind*, 2017 WL 4570572, at *2, when he was nineteen years old, (ECF

---

[9] The Court notes that the Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes. *United States v. Ming Hong*, 242 F.3d 528, 532 (4th Cir. 2001) (citing *Hawkins v. Hargett*, 200 F.3d 1279, 1285 n. 5 (10th Cir.1999), *cert. denied*, 531 U.S. 830 (2000)); *accord United States v. Aiello*, 864 F.2d 257, 265 (2nd Cir.1988); *see also O'Neil v. Vermont*, 144 U.S. 323, 331 (1892) ("If

No. 63 at 26).   Although Petitioner argues that his sentence is the equivalent of a life sentence, (ECF No. 103 at 6), he will have parole eligibility before he turns 60 years old, (*see* ECF Nos. 63 at 26; 90 at 40 (arguing that Petitioner will have parole eligibility in 2039).)   Thus, the Court is not required to engage in a proportionality analysis.

For the sake of certainty, though, Petitioner's sentence was not excessive under *Solem*. Under the first factor, it is clear that the gravity of Petitioner's offenses was great.   Petitioner killed the victim by repeatedly bludgeoning him with a hammer.   (ECF No. 90-3 at 274.)   Then, he left the victim in a pool of blood, made no effort to call medical personnel, and stole the victim's wallet and vehicle.   (*Id.* at 276-77.)   After that, Petitioner used the victim's car to go to multiple stores, where he used the victim's credit card to buy himself and Jones food and other various items.   (*Id.* at 277.)

As to the second factor, Petitioner's sentence is not disproportionate in comparison with other sentences imposed in West Virginia.   As the PF&R noted, "a non-exhaustive review of robbery sentences that have been upheld in West Virginia supports the sentence imposed in [Petitioner's] case."   (ECF No. 113 at 23 (collecting cases).)   Similarly, Petitioner's sentence of 40 years for second-degree murder is identical to other sentences for the same crime in West Virginia.   *See, e.g.*, *State v. Foster*, 656 S.E.2d 74 (W.Va. 2007) (consecutive forty-year sentences for two counts of second-degree murder); *State v. Grantham*, No. 12-1293, 2013 WL 6152080 (W.Va. Nov. 22, 2013) (forty years for second-degree murder); *State v. Cross*, No. 13-0260, 2013 WL 5966968 (W.Va. Nov. 8, 2013) (same); *State v. Payne*, No. 11-1045, 2012 WL 3104253 (W.Va. June 22, 2012) (same).

---

[the defendant] has subjected himself to a severe penalty, it is simply because he has committed a great many such offences[.]").

16

As to the third factor, Petitioner's sentence is not disproportionate in comparison with sentences imposed in other jurisdictions.   A review of other jurisdictions reveals the same or more severe sentences imposed for second-degree murder.   *See, e.g.*, *State v. Allen*, 41,548 (La. App. 2 Cir. 11/15/06), 942 So. 2d 1244, *writ denied sub nom. State ex rel. Allen v. State*, 2007-0530 (La. 12/7/07), 969 So. 2d 619 (life sentence when the victim was hit multiple times with a hammer); *People v. Richard*, No. 251330, 2005 WL 563312 (Mich. Ct. App. Mar. 10, 2005) (thirty to sixty years when defendant beat the victim to death); *State v. Quevedo*, 2020 S.D. 42, 947 N.W.2d 402 (sentence of 90 years in prison, with eligibility for parole in 45 years, when victim was stabbed multiple times, even though defendant was only 17 years old at the time of the crime); *Gonzales v. Runnels*, No. EDCV06-01207-MMMOP, 2009 WL 3731879 (C.D. Cal. Oct. 30, 2009) (forty years to life, even though defendant was only fifteen years old at the time of the crime).   Similarly, other jurisdictions have imposed severe penalties for robbery.[11]   *See State v. Glover*, 355 S.E.2d 631, 640 (W.Va. 1987) (collecting cases); *see also State v. Hoskins*, 522 So.2d 1235 (La. Ct. App. 1988) (99-year sentence); *Robinson v. State*, 743 P.2d 1088 (Okla. Crim. App. 1987) (100-year sentence); *Garrett v. State*, 486 S.W.2d 272 (Mo. 1972) (ninety-nine years sentence); *State v. Boag*, 104 Ariz. 362, 453 P.2d 508 (1969) (seventy-five-to-ninety-nine-year sentence).

Consequently, the state court's decision was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts presented in the

---

[11] Petitioner's federal habeas petition argues that statutes in California, Maryland, and Nevada impose sentences no greater than twenty years for robbery.   (ECF No. 63 at 27.)   The Court notes that a defendant may raise two types of Eighth Amendment challenges to his sentence: an "as-applied" challenge on the grounds that "the length of a certain term-of-years sentence [is] disproportionate 'given all the circumstances in a particular case,'" or a "categorical" challenge asserting "that an entire class of sentences is disproportionate based on 'the nature of the offense' or 'the characteristics of the offender.'"   *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir.2014) (quoting *Graham*, 560 U.S. at 59–60).   Because Petitioner's argument focuses on his particular sentence, the Court will treat it as an "as-applied" challenge.

state proceeding, and therefore federal habeas relief is not warranted.  Accordingly, the Court **OVERRULES** Petitioner's objections with respect to this portion of the PF&R.

F. *Sentencing Record Objection*

Petitioner objects to the PF&R's analysis on his claim that the trial court did not produce a sufficient sentencing record because this is "[n]ot to purely argue a state court issue, as Magistrate Eifert suggests."  (ECF No. 103 at 7.)   However, it is clear the PF&R did not frame this as solely a state law issue, as it stated that "to the extent that [Petitioner] relies on federal case law, which dictates that mitigating factors must be considered in capital cases, such authority is inapplicable to his case because [Petitioner] was not sentenced for a capital crime."  (ECF Nos. 99 at 22-23; 113 at 24.)  Accordingly, the Court **OVERRULES** Petitioner's objection with respect to this portion of the PF&R.

G. *Objections Related to Petitioner's Ineffective Assistance of Trial Counsel Claims*

In his second state habeas petition, Petitioner claimed he was denied his right to effective assistance of trial counsel when his attorney failed to call certain witnesses to testify on Petitioner's behalf at sentencing, among other things.  *Lind*, 2015 WL 5125884, at *2.  In affirming the circuit court's denial of these claims, the WVSCA noted that Petitioner was procedurally barred from raising these claims, as he did not name his trial counsel in his *Losh* list.  *Id.* at *5. However, the WVSCA also reasoned that "it is unlikely that petitioner would prevail on this argument, notwithstanding his failure to name trial counsel in his *Losh* list, as counsel effectively advocated for petitioner and secured a lesser conviction for him."  *Id.*   Thus, the WVSCA held that "it cannot be maintained that petitioner was provided ineffective assistance of counsel at his trial," *id.*, and "[P]etitioner was adequately represented in all stages of his case," *id.* at 3.

18

Petitioner now raises these procedurally defaulted ineffective assistance of trial counsel claims in his federal petition, (ECF No. 63 at 9-15), and moved for leave to file a *Martinez*[12] brief to defeat the procedural default and have his ineffective assistance of trial counsel claims reviewed *de novo*, (*see* ECF No. 94).

The Sixth Amendment guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); U.S. Const. Amend. XI.   In *Strickland*, the Supreme Court annunciated a two-prong test for determining whether counsel was ineffective. Under this test, a defendant must show (1) "that counsel's performance was deficient[,]" which requires a "showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "that the deficient performance prejudiced the defense[,]" which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*).

Petitioner must overcome two layers of deference for the Court to sustain his ineffective assistance of trial counsel objections.   First, the United States Supreme Court's pronouncement in *Strickland* accords to his trial counsel a "highly deferential" level of judicial scrutiny.

---

[12] In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court recognized that

> [A] federal habeas court [may] find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (third and fourth alterations in original) (emphasis omitted) (quoting *Martinez*, 566 U.S. at 13-18).   A "substantial" claim is one that "has some merit."   *Martinez*, 566 U.S. at 14.   The Supreme Court later clarified that the *Martinez* exception applied in a jurisdiction that does not require an IAOC claim to be raised in an initial collateral review proceeding, such as West Virginia.   *See* 569 U.S. at 429.

*Strickland*, 466 U.S. at 689.   Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."   *Id.*   The burden falls to Petitioner to demonstrate otherwise.   *See id.* at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that [were] . . . in light of all the circumstances, . . . outside the wide range of professionally competent assistance.").   If counsel made a "strategic choice" after a "thorough investigation of law and facts," the act is "virtually unchallengeable."   *Id.*   Acts or omissions not determined to be strategic—either because they were not adequately informed or they were not conscious decisions at all—are still analyzed by an objective reasonableness standard.   *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *Kimmelman v. Morrison*, 477 U.S. 365, 375, 386 (1986).

If the Court determines under this deferential standard that his trial counsel's action fell outside the accepted range of professionally reasonable conduct, Petitioner must also show that he was prejudiced by the errors—that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Strickland*, 466 U.S. at 694.   A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.   *Id.*   In addressing ineffective assistance of counsel claims, courts may address either issue—counsel's performance or prejudice from the alleged error—first, since a finding adverse to the petitioner on either issue is dispositive.   *See id.* at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of [the] claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

20

In addition to this deferential standard, § 2254 petitioners making ineffective assistance claims must show that the reviewing state court applied *Strickland* unreasonably.   *See Elmore v. Ozmint*, 661 F.3d 783, 856–66 (4th Cir. 2011).   The Supreme Court has noted that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."   *Harrington*, 562 U.S. at 105 (internal quotations and citations omitted) (noting that "[s]urmounting *Strickland*'s high bar is never an easy task" and that "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult").   "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."   *Id.*   Ultimately, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id.* at 103.

Here, the PF&R found that, even if the Court conducted a *de novo* review, none of Petitioner's ineffective assistance of trial counsel claims provide a basis for federal habeas relief because his trial counsel was not constitutionally deficient.   (ECF Nos. 99 at 29-40; 113 at 31-41.)   Petitioner objects to the PF&R's analysis on his claims related to his trial counsel's (1) failure to call witnesses at sentencing, (2) cross-examination of Jones, (3) failure to object to the *animus furandi* jury instruction, and (4) failure to offer testimony by Robert Shingleton ("Shingleton") to the jury.   (*See* ECF No. 103 at 14-20.)   Each is discussed below.

1. <u>Failure to Call Witnesses at Sentencing</u>

In his federal habeas petition, Petitioner claims that his trial counsel was ineffective for failing to call certain witnesses to testify on his behalf at sentencing.  (ECF No. 63 at 9.)   The PF&R found that Petitioner did not establish that (1) he suffered any prejudice from his trial counsel not calling Dr. Miller to testify at sentencing, or (2) his counsel was constitutionally ineffective by not calling Petitioner's family members and ex-girlfriend to testify at sentencing. (ECF Nos. 99 at 31-32; 113 at 32-33.)   Petitioner makes three objections.

To start, Petitioner challenges the "position" that mitigation is only mandatory in death penalty cases.  (ECF No. 103 at 14.)   Yet, the PF&R only correctly noted that "*it has not been held* that presentation of mitigating evidence is required at sentencing in a non-capital case." (ECF Nos. 99 at 30; 113 at 31-32 (emphasis added).)

In a capital case, a criminal defense attorney has a duty to investigate, develop, and present mitigating evidence during penalty phase proceedings.  *Wiggins*, 539 U.S. at 521-23.   Still, the Supreme Court was clear that defense counsel is not required "to present mitigating evidence at sentencing in every case."   *Id.* at 533.   Further, the Supreme Court has never held that the Eighth Amendment requirement that the jury be allowed to consider all relevant mitigating evidence applies in a non-capital case.  *See Gilmore v. Taylor*, 508 U.S. 333, 349 (1993) (O'Connor, J., concurring); *Lambert v. Blodgett*, 393 F.3d 943, 983 (9th Cir. 2004) ("[T]he Supreme Court[] has never imposed such an obligation in non-capital cases"); *see also Slocum v. Kelley*, 854 F.3d 524, 533 (8th Cir. 2017) ("The Supreme Court has . . . never decided a case enunciating the standards that apply [to ineffective assistance claims regarding the investigation into and presentation of evidence] during non-capital sentencing.").

Nevertheless, "*Strickland* applies in both capital and noncapital sentencing proceedings[.]" *United States v. Conner*, 456 F. App'x 300, 304 (4th Cir. 2011) (internal citation omitted).   To that extent, the PF&R conducted a *Strickland* analysis and determined that Petitioner did not satisfy the prejudice prong because he did not put forth any evidence to show that there is a strong possibility that he would have received a shorter sentence if certain witnesses had testified.   (*See* ECF Nos. 99 at 31-32; 113 at 32-33.)   Although Petitioner objects to this finding because he "has filed multiple habeas petitions," which "establishes diligence" (ECF No. 103 at 14-15), his diligence is irrelevant to a *Strickland* analysis.

Further, to the extent that the state court reached the merits of this claim, its decision was neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable determination of the facts presented in the state proceeding, and therefore federal habeas relief is not warranted.   Accordingly, the Court **OVERRULES** Petitioner's objections with respect to this portion of the PF&R.

   2.   Failure to Cross-Examine and Impeach Jones

Petitioner's federal habeas petition also includes an ineffective assistance of counsel claim based on his trial counsel's (1) failure to "vigorously cross examine" Jones "by not asking him if he received any favorable treatment in exchange for [his] testimony" against Petitioner and (2) failure to introduce Jones's criminal history to impeach Jones's credibility.   (ECF No. 63 at 12). However, the PF&R reasoned that (1) Jones was not offered immunity or any other kind of consideration for his testimony, and (2) "Jones admitted that he was presently incarcerated on two one-to-ten year sentences for forging and uttering a stolen check and that it would take him a 'good bit of time' to even recount all of the 'worthless checks' that he had written."   (ECF Nos. 99 at

34; 113 at 34-35 (citing ECF No. 90-2 at 276-77).)   Petitioner makes three objections to the PF&R's analysis.

First, Petitioner objects to the "position" that Jones was not offered any favorable treatment because Jones was on parole for forgery when the McDonald's forgery took place and thus had an incentive to lie under oath to avoid a third conviction for forgery.   (*See* ECF No. 103 at 18.)   The Court disagrees.   There is nothing in the record to suggest that Jones was offered anything by the prosecution for his testimony.   Further, if Jones was concerned about being convicted for the McDonald's forgery, he could have asserted his Fifth Amendment right against self-incrimination.[16]   U.S. Const., amend. V.   Thus, there was no favorable treatment about which Jones could be cross-examined and therefore no basis for a finding of deficient performance by counsel.

Second, Petitioner argues that Jones's testimony regarding his criminal record for forgery "more than likely held little to no weigh[t] of importance" to the jury because "most normal working people have accidently written a worthless check."   (ECF No. 103 at 18.)   Even if Petitioner is correct, it is unclear what other criminal record he thinks should have been introduced that would have influenced the jury.[17]   This also affords no basis for a claim of deficient performance.

Third, Petitioner argues that a surveillance videotape from McDonald's would have "also aided the [j]ury in making its credibility determination" because, contrary to Jones's testimony, it

---

[16] The Court also notes that the punishment for committing perjury is the same as Jones would have faced for the McDonald's forgery.   *Compare* W. Va. Code, § 61-5-3 (one to ten years term of imprisonment for perjury) *with* W. Va. Code § 61-3-24a(c) (one to ten years imprisonment for forgery of a credit card).

[17] This Court is not required "to act as an advocate for a *pro se* litigant," *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978), or "conjure up questions never squarely presented," *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

would have shown him handing the credit card to the cashier.   (*See* ECF No. 103 at 18.)
However, this seems to blend two of Petitioner's claims.   *Inter alia*, his federal habeas petition
alleges that Petitioner's trial counsel was ineffective for (1) failing to introduce Jones's criminal
record to impeach Jones, and (2) "failing to conduct a proper investigation" when he did not
"pursue exculpatory evidence," i.e., the McDonald's video clip.   (ECF No. 63 at 12-13.)   Both
of these claims present "different grounds for relief" than an argument that the video clip should
have been introduced to impeach Jones, and the Court is not required to review this new claim
Petitioner raised for the first time in his objections to the PF&R.   *See Samples v. Ballard*, 860
F.3d 266, 274-75 (4th Cir. 2017) (holding that a district court is not required to review new issues
raised for the first time in a petitioner's objections to a PF&R).

Further, to the extent that the state court reached the merits of this claim, its decision was
neither contrary to, nor an unreasonable application of, federal law, nor was it an unreasonable
determination of the facts presented in the state proceeding, and therefore federal habeas relief is
not warranted.   Accordingly, the Court **OVERRULES** Petitioner's objections with respect to this
portion of the PF&R.

3.   Failure to Object to Jury Instruction or Elicit Testimony of Shingleton

Petitioner's federal habeas petition also claims that his trial counsel was ineffective because
(1) he did not request a jury instruction, or object to the lack of a jury instruction, on *animus furandi*
as an essential element of robbery, and (2) he did not depose Shingleton or ask for a stay in
Petitioner's trial until Shingleton's direct appeal was completed.   (ECF No. 63 at 14-15.)   The
PF&R reasoned that the WVSCA's finding that the robbery instruction was proper under West
Virginia law is not the proper subject of federal habeas review, and the evidence Petitioner wanted

his trial counsel to solicit from Shingleton was presented at trial.   (ECF No. 113 at 38, 41.)
However, Petitioner objects to the PF&R because it did not include a structural error analysis
regarding these claims.[18]   (ECF No. 103 at 20.)

The Supreme Court has explained that "[g]iven the myriad safeguards provided to assure
a fair trial, and taking into account the reality of the human fallibility of the participants, there can
be no such thing as an error-free, perfect trial," and the Constitution does not demand one.   *United
States v. Hasting*, 461 U.S. 499, 508 (1983).   Thus, "[c]riminal defendants in this country are
entitled to a fair, but not a perfect trial."   *Sherman v. Smith*, 89 F.3d 1134, 1137 (4th Cir. 1996).
As such, most errors do not automatically render a trial unfair and, thus, can be harmless.   *Arizona
v. Fulminante*, 499 U.S. 279, 306-08 (1991) (explaining that a "trial error" occurs during the
presentation of the case to the jury and may therefore be "quantitatively assessed in the context of
other evidence presented" under a harmless error analysis).

Conversely, a *structural* error requires automatic reversal of a conviction.   *Id.* at 308.
However, "if the defendant had counsel and was tried by an impartial adjudicator, there is a *strong
presumption* that any other errors that may have occurred are subject to harmless-error analysis."
*Rose v. Clark*, 478 U.S. 570 (1986) (emphasis added); *see also United States v. Blevins*, 960 F.2d
1252, 1261-62 (4th Cir. 1992).   In fact, the "very limited class of cases" in which the Court has
found a structural error are those with "a defect affecting the framework within which the trial
proceed[ed][.]"   *Neder v. United States*, 527 U.S. 1, 8 (1999).

---

[18] Petitioner also objects to the PF&R because "to the best of [his] recollection," Shingleton did not testify before the
jury.   Yet, a review of the trial court transcripts shows that Shingleton did testify before the jury.   (ECF No. 90-3 at
145-46, 148-49 (confirming certain information—including that the victim made a sexual advance toward him—but,
due to his pending appeal, otherwise asserting his Fifth Amendment privilege against self-incrimination).)

Here, because Petitioner had counsel and was tried by an impartial adjudicator, there is a strong presumption that any errors that may have occurred are subject to a harmless-error analysis, rather than a structural error analysis.  *See Rose*, 478 U.S. 570.  Yet, he did not offer any argument that his trial counsel's failure to object to the burglary instruction or elicit Shingleton's testimony "affect[ed] the framework" within which his trial proceeded.  *See Neder*, 527 U.S. at 8.  Thus, Petitioner has not overcome the strong presumption that his trial counsel's alleged errors are subject to the harmless-error analysis simply by claiming that a structural error analysis should have been conducted.  *See also Fulminante*, 499 U.S. at 306-08.  Accordingly, the Court **OVERRULES** Petitioner's objection with respect to this portion of the PF&R.

### H.  Waiver Objection

Petitioner's ineffective assistance of trial counsel claims were procedurally defaulted because he waived them by not including them in his *Losh* list.[19]  Petitioner objects to the PF&R for failing to conduct an analysis under *Johnson v. Zerbst*, (ECF No. 103 at 22), which requires a waiver to ordinarily be "the intentional relinquishment or abandonment of a known right or privilege," 304 U.S. 458, 464 (1983).  However, on appeal of his second state habeas petition, the WVSCA ruled on the merits of Petitioner's ineffective assistance of trial counsel claims, despite the fact that they were procedurally defaulted.  *See Lind*, 2015 WL 5125884, at *5 (determining that it could not "be maintained that [Petitioner] was provided ineffective assistance of counsel at his trial").  Additionally, the PF&R included a *Strickland* analysis on Petitioner's procedurally defaulted claims.  (ECF No. 113 at 26-41.)  As such, a *Zerbst* analysis was unnecessary.

---

[19] Petitioner and his counsel went through a list of grounds which he was potentially raising and those he was waiving, (ECF Nos. 79-8 at 9, 90-6 at 6-8, 20-21), pursuant to the WVSCA's holding in *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981) (compiling a comprehensive list of fifty-three potential grounds "which might be considered sufficient" for habeas corpus relief).

Accordingly, the Court **OVERRULES** Petitioner's objection with respect to this portion of the PF&R.

I. *Nonbinding Precedent Objection*

Petitioner objects to the PF&R's *McCoy* analysis due to its "reliance" on *Smith v. Hooks*, No. 5:17-HC-2103-BO, 2018 WL 9815045 (E.D.N.C. Sept. 19, 2018), which he argues is not binding precedent, (ECF No. 116 at 3). Then, Petitioner claims that "*McCoy* simply applies a general standard of review to the garden variety applications of *Faretta* to the factual circumstances it was meant to address." (*Id.* at 2.) However, the PF&R did not rely on *Hooks*, as it only used the court's reasoning in explaining that *McCoy* could not be retroactively applied to cases that were final before it was decided. (*See* ECF No. 113 at 49-50). Further, *Hooks* was affirmed *sub nomine* in *Smith v. Stein*, 982 F.3d 229 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2532, 209 L. Ed. 2d 558 (2021) (holding that *McCoy* was not a watershed rule of criminal procedure retroactively applicable to cases on collateral review), which is binding precedent.

Accordingly, the Court **OVERRULES** Petitioner's objections with respect to this portion of the PF&R.

J. *Petitioner's Motion for Leave to File a* Martinez *Brief*

Lastly, Petitioner objects to the PF&R because it "failed to apply the correct standard of review regarding Petitioner's Motion for Leave to File *Martinez* Brief," and alternative motions related to Petitioner's procedurally defaulted claims, which are "crucial in determining whether Petitioner has made a showing under *Martinez*."[20] (ECF No. 103 at 12-13, 23.) Specifically,

---

[20] Petitioner also objected because the PF&R "failed to resolve [his] [p]rocedural issues," in which he argues that an evidentiary hearing should be held. (*See* ECF No. 116 at 3-10.) These motions sought appointment of counsel to conduct discovery, an evidentiary hearing, and to supplement the record. (*See* ECF No. 95.) By order entered March 31, 2022, this Court denied these motions. (ECF No. 125.)

Petitioner seeks to file a *Martinez* brief to defeat the procedural default related to his ineffective assistance of trial counsel claims for failing to call certain mitigating witnesses at sentencing.[21] (ECF No. 95.)   By order entered March 31, 2022, this Court denied Petitioner's Motion for Leave to File a *Martinez* Brief but stated that it would provide the rationale in this Memorandum Opinion and Order.   (*See* ECF No. 125.)   The Court will now provide its reasons.

Rule 8(a) of the Rules Governing § 2254 cases "provides that a judge shall determine, in his discretion, whether an evidentiary hearing is required," and "[i]ncluded in this broad grant of authority is the power to decide whether the legal and factual issues raised in a habeas petition and response should be briefed."   *See Maynard v. Dixon*, 943 F.2d 407, 411–12 (4th Cir. 1991) (citing C. Wright, A. Miller & E. Cooper, 17A Federal Practice and Procedure: Jurisdiction 2d § 4268.3, at 505–17 (1988)).   Rule 12 of the Rules Governing § 2254 cases also allows the Federal Rules of Civil Procedure to be applied "to the extent that they are not inconsistent with any statutory provisions or these rules."   Similarly, the rules governing amendment of federal habeas petitions provide that habeas petitions may be amended or supplemented in accordance with the Federal Rules of Civil Procedure.   *See* 28 U.S.C. § 2242.

To that extent, Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only by leave of the court or by written

---

[21] In his objections to the PF&R, Petitioner also argues he has shown "cause" thereby excusing his procedural default because his trial counsel's "failure to investigate" meets the substantial claim requirement under *Martinez*.[21]   (*See* ECF No. 103 at 15.)   However, Petitioner never raised a claim based on trial counsel's failure to *investigate* mitigating evidence related to the witnesses Petitioner thinks should have been called to testify.   (*See* ECF No. 63 at 9-15.) While closely related, Petitioner's claim that his trial counsel was ineffective for "fail[ing] to call any witnesses during sentencing," (ECF No. 63 at 9-11), provides a "different ground[] for relief" than a claim that his trial counsel was ineffective for failing to *investigate* mitigating evidence.   *See Samples*, 860 F.3d at 274; *see also Mayle v. Felix*, 545 U.S. 644, 661 (2005) (explaining that different claims must be pleaded discretely).   Thus, this Court is not obligated to entertain this argument as it relates to a new claim raised for the first time in Petitioner's objections to the PF&R. *Samples*, 860 F.3d at 275.

consent of the adverse party."   Leave to amend should be "given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment."   *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted).   "A denial based on futility should only be granted when the proposed amendment is 'clearly insufficient or frivolous on its face.'"   *Veolia Es Special Servs.*, *Inc. v. Techsol Chem. Co.*, 2007 WL 4255280, at *8 (S.D. W.Va. Nov. 30, 2007) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir.1986)).

In this case, a *Martinez* brief is not required because Petitioner's ineffective assistance of counsel claim for failing to call certain mitigating witnesses at sentencing is insufficient on its face.   The *Martinez* exception applies only to "substantial claims" of ineffective assistance of trial counsel, which requires the petitioner seeking to invoke the *Martinez* exception to demonstrate that the ineffective assistance of counsel claims have "some merit."   *Martinez*, 566 U.S. at 14. Here, though, Petitioner's claim fails to adequately plead the prejudice prong under *Strickland* and is thus insufficient on its face.   *See Techsol Chem. Co.*, 2007 WL 4255280.

As discussed above, a federal court reviewing a state court's habeas decision must apply the § 2254 and the *Strickland* standards simultaneously.   *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (citing *Harrington*, 562 U.S. at 105 (section 2254(d) applies even if the state court issued a summary decision unaccompanied by an explanation)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (explaining that the "doubly deferential" standard of review "gives both the state court and the defense attorney the benefit of the doubt").   Here, the WVSCA affirmed the circuit court's denial of Petitioner's ineffective assistance of trial claims in his second habeas petition, *see* 2015 WL 5125884 at *5, albeit in a summary fashion, *see Harrington*, 562 U.S. at 105.   Thus, Petitioner would have to overcome the double deference standard.

30

Here, Petitioner wanted his trial counsel to procure testimony from Dr. Miller and his mother, siblings, brother-in-law, and ex-girlfriend.   (ECF No. 94 at 5.)   Although his Motion for Leave to File a *Martinez* Brief does not specify what information these witnesses would offer, (*see id.*), Petitioner claimed in a separate motion that Dr. Miller can testify to, *inter alia*, his expert opinion that Petitioner does have a mental disease or defect; his mother can testify regarding his drug use, an incident in which Petitioner saved her life, and how Petitioner's father's death affected him; his siblings can testify that he "was not a violent person," he "was a chronic drug user," "mental illness runs in the family, and how . . . the death of Petitioner's father [a]ffected Petitioner"; and his ex-girlfriend could testify regarding his drug use and the fact that Petitioner was never violent with her, (*see* ECF No. 95 at 3, n.3).

However, even if Petitioner could overcome the "strong presumption" that his trial counsel's conduct fell "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, he does not make any argument that he was prejudiced by this conduct, *id.* at 694. Instead, his federal habeas petition only claims that "there was a "[very] strong probability" that he would have received a shorter sentence if the witnesses' testimony had been offered.[22]   (ECF No. 63 at 11.)   And in his motion for leave to file a *Martinez* brief, he only argues that it is impossible for the Court to determine prejudice without these witnesses' testimony.   (*See* ECF

---

[22] This legal conclusion is also unpersuasive as most of the information he wanted to adduce from these witnesses was already before the trial court.   Petitioner testified at trial regarding the death of his father, and Dr. Miller's report mentioned that Petitioner saw school counselors following his father's death and that he was prescribed Valium at that time.   (ECF Nos. 90-3 at 126; 90-11 at 11.)   And the state trial court judge reviewed Dr. Miller's report multiple times and heard testimony from Dr. Miller during the suppression hearing, including his opinion that Petitioner suffers from a mental illness and drug addiction.   (ECF No. 90-2 at 45.)   The only evidence the trial court did not hear was testimony from his family and ex-girlfriend that he was not a violent person and that he saved his mother's life once. Even so, this would not be enough to find that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

No. 94 at 4, 7.)

Accordingly, because Petitioner did not plead any factual allegations to show prejudice under *Strickland*, his ineffective assistance of counsel claim for his trial counsel's failure to call certain mitigating witnesses is insufficient on its face, *see Techsol Chem. Co.*, 2007 WL 4255280, and a *Martinez* brief is not warranted.

### K.  Certificate of Appealability

The Court has also considered whether to grant Petitioner's numerous requests for a certificate of appealability.   *See* 28 U.S.C. § 2253(c).   A certificate will be granted only if there is "a substantial showing of the denial of a constitutional right."   *Id.* at § 2253(c)(2).   The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable.   *Miller–El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 437, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683–83 (4th Cir. 2001).   The Court concludes that the governing standard is not satisfied in this instance.   Pursuant to Rule 11(a) of the Rules Governing Proceedings Under 28 U.S.C. § 2254, Petitioner may not appeal the Court's denial of a certificate of appealability, but he may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

The Court thus **DENIES** any certificate of appealability.

### IV.     CONCLUSION

For these reasons, the Court **ADOPTS** the Second PF&R to the extent consistent with this Memorandum Opinion and Order, (ECF No. 113), and **OVERRULES** Petitioner's objections, (ECF No. 103, 116.)   The Court further **DENIES** Petitioner's Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254, (ECF Nos. 63, 107); **DENIES** Petitioner's requests for a certificate of appealability; and **DISMISSES** this matter **WITH PREJUDICE**.   The Clerk is **DIRECTED** to remove this case from the active docket of this Court.

       **IT IS SO ORDERED**.

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                  ENTER:       April 8, 2022

                                      THOMAS E. JOHNSTON, CHIEF JUDGE